## Richmond

Francis Woodrow Dyke v. Commonwealth of Virginia.

March 10, 1952.

Record No. 3944.

Present, All the Justices.

The opinion states the case.

*Samuel Goldblatt,* for the appellant.

*J. Lindsay Almond, Jr., Attorney General* and *Frederick T. Gray, Assistant Attorney General,* for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

The question on this appeal is whether the trial court had jurisdiction to revoke the suspension of the execution of the jail sentence previously imposed on the defendant. The answer is to be found in the construction of some of the provisions of sections 53-272 and 53-275 of the Code of 1950.

The defendant, Dyke, was indicted for manslaughter. He pleaded not guilty, was tried by the court on February 28, 1950, found guilty of involuntary manslaughter, but sentence was deferred to await the report of the probation officer of Norfolk county, to whom the case was referred. No question is raised about that procedure. *Cf. Linton* v. *Commonwealth,* 192 Va. 437, 65 S. E. (2d) 534.

Thereafter, by order entered on April 25, 1950, the defendant was sentenced to jail for twelve months and fined $100. This order concluded thus:

"After having this day received a report from the Probation Officer in regards to this case, and the Court deeming it compatible with the public interest, that the said Twelve (12) Months jail sentence herein imposed upon the said defendant, be, and the same is hereby suspended and doth place the defendant Francis Woodrow Dyke, upon his good behavior for a period of one year from this date, upon condition that he keep the peace and dignity and not violate any of the laws of the Commonwealth of Virginia, or the County of Norfolk for a period of one year from this date, and the case is continued in order to give the defendant time to pay the aforesaid fine and costs."

On October 16, 1950, the defendant was convicted of reckless driving and fined; and again on December 9, 1950, he was convicted and fined on two charges, one of disorderly conduct and the other of destroying private property. The probation officer knew of these convictions prior to April 25, 1951, but the defendant had not been placed on probation supervision and the probation officer did not report these convictions either to the Commonwealth's attorney or to the judge. These facts are not disputed, but are set out in an agreed statement of facts, which also sets forth that on May 2, 1951, a rule was issued against the

defendant to show cause "why the suspended sentence aforesaid should not be revoked;" and that upon the matter being heard on June 4, 1951, the court "did thereupon revoke the said suspended sentence and remanded him, the said Francis Woodrow Dyke to the custody of the Sheriff of Norfolk County, Virginia, to be confined in jail for twelve (12) months."

The order entered on June 4, 1951, refers to the order of April 25, 1950, recites that the defendant's sentence was suspended "upon the condition that he keep the peace and dignity, and not violate any of the laws of the Commonwealth of Virginia, or the County of Norfolk, for a period of one (1) year," and concluded thus: "It appearing to the Court that the defendant, Francis Woodrow Dyke has violated the terms of the probation order, it is ordered that his probation period be, and the same is hereby revoked."

The defendant contended below and contends here that the trial court had no jurisdiction of the matter "after the expiration of the period of suspension of said sentence, to-wit, after April 25th, 1951."

The Commonwealth contends on the other hand that the defendant was not placed on probation; that no period of suspension was fixed by the trial court, and that the trial court could revoke the suspension of the sentence at any time within five years, that being the maximum period for which the defendant might originally have been sentenced to be imprisoned. Its argument is that by the order of April 25, 1950, the court did not prescribe a period of probation within the meaning of section 53-275 but suspended the sentence upon the condition that the defendant be of good behavior for one year, which condition the defendant admittedly did not keep.

The probation law of this State was enacted in 1918, Acts 1918, ch. 349, p. 528. It has remained unchanged except for amendments to section 2, made by Acts 1938, ch. 122, p. 188. The 1918 act as so amended appears as sections 53-266 through 53-279 of the Code, except sections 53-276 and 53-278.1, with which we are not now concerned.

Section 53-272 provides, so far as now pertinent, that after a plea, verdict or judgment of guilty, "the court may suspend the imposition or the execution of sentence, or commitment, and may also place the defendant on probation under the supervision of a

probation officer, during good behavior, for such time and under such conditions of probation as the court shall determine.''

Section 53-275 provides: ''The court may, for any cause deemed by it sufficient, revoke the suspension of sentence and any probation, if the defendant be on probation, and cause the defendant to be arrested and brought before the court at any time within the probation period, or if no probation period has been prescribed then within the maximum period for which the defendant might originally have been sentenced to be imprisoned,'' whereupon in case the execution of the sentence has been suspended, ''the original sentence shall be in full force and effect.''

In *Richardson* v. *Commonwealth,* 131 Va. 802, 109 S. E. 460, decided under the 1918 act, the accused was sentenced on November 10, 1919, to thirty days in jail and a fine of $50, but the court suspended the jail sentence ''during good behavior,'' and upon payment of the fine and cost ''the accused is discharged from custody until the further order of this court.'' On September 14, 1920, the accused was again convicted of a misdemeanor and on February 21, 1921, an order was entered annulling the suspension and committing the defendant to jail to serve the thirty-day sentence.

Against the contention that the court had no jurisdiction to revoke the suspension because the order of November 10 had become final, it was held: ''When the execution of a sentence is thus suspended, under the Virginia statute, the case remains pending and the court does not thereby lose its control over the accused or his case.'' 131 Va. at p. 807, 109 S. E. at p. 461.

The court then held that under section 2 of the 1918 act (now § 53-275 as amended) the trial court could revoke the suspension either (1) within the period of probation if one was prescribed in the suspending order; or (2) if none was prescribed, then within the maximum period for which the accused could have been originally imprisoned.* It was then held that since the trial court ''did not prescribe a definite period during which the suspension of the sentence should continue,'' the second alternative applied and the court's power to revoke continued for the maximum period for which the defendant could have been imprisoned, which in that case was six months.

---

* To make it clear that that was the meaning of the statute, the court suggested the addition of the words ''or if no probation period has been prescribed then,'' and that addition was made by the 1938 amendment. Acts 1938, ch. 122, p. 188.

In *White* v. *Commonwealth,* 170 Va. 641, 196 S. E. 610, it was held that the maximum period for which the defendant might originally have been sentenced to be imprisoned meant the maximum period under the indictment and the evidence, not under the indictment alone. In that case the jail sentence was also suspended "during the good behavior of the defendant."

Both the *Richardson Case* and the *White Case* were decided under the 1918 act and both stated two alternatives as being open to the trial judge.

In the *Richardson Case* it is said: "The draftsman of the act appears to have had in mind that in the discretion of the judge there might be two alternatives: (1) That the convicted person might be placed on probation—that is, discharged on condition that he would be of good behavior, either with or without supervision and without any express limitation of the period during which this probation should continue; (2) There might be such a suspension of the sentence either with or without the supervision of a probation officer for a definite period until the further order of the court." 131 Va. at p. 811, 109 S. E. at pp. 462-3.

It is to be noted, however, with respect to the first alternative, that the statute (now § 53-272) provides only for probation with supervision, and for prescribing the time and conditions thereof.

In the *White Case* the alternatives are thus stated: "(1) That the convicted person may be placed on probation conditioned upon his good behavior for a definite period until the further order of the court and (2) that his sentence may be suspended without any express limitation as to the duration of the suspension." 170 Va. at p. 647, 196 S. E. at p. 612.

It is then said that when the second alternative is chosen, the second revocation limit applies; *i. e.,* the court may revoke the suspension at any time within the maximum period for which the defendant might have been imprisoned.

In the present case, as in the *White Case,* there was no express limitation as to the duration of the suspension, and hence the jurisdiction of the court to revoke the suspension continued for the maximum period for which the defendant might originally have been imprisoned; *i. e.,* five years from April 25, 1950.

It is obvious that a distinction is made in both sections 53-273 and 53-275 between suspension of sentence and probation. Sentence may be suspended without putting the defendant on probation. Section 53-272 says that the court may suspend

sentence, "and may also place the defendant on probation under the supervision of a probation officer," during good behavior, for such time and under such conditions of probation as the court shall determine. Section 53-275 provides that the court may revoke the suspension "and any probation, if the defendant be on probation."

Section 53-278 emphasizes the difference between a suspension of sentence conditioned on good behavior, and such a suspension coupled with placing the defendant on probation "under the supervision of a probation officer." In the latter case this section requires the probation officer to furnish the defendant with a written statement of the conditions of his probation and to instruct him in regard to them; to keep informed concerning the conduct and condition of the defendant by visiting, requiring reports and in other ways; to report to the court at least monthly and to do other things to aid and encourage the defendant and bring about improvement in his conduct and condition.

That is the type of probation contemplated by section 53-272 in providing that in addition to suspending the sentence the court "may also place the defendant on probation under the supervision of a probation officer." The court may prescribe the time and the conditions of this probation. If it prescribes the time; i. e., the period of probation, the court may, under section 53-275, revoke the suspension and the probation only within the probation period. If no such probation period has been prescribed, the court may revoke the suspension at any time within the maximum period for which the defendant might originally have been imprisoned.

The order of April 25, 1950, did not prescribe a probation or a probation period within the meaning of sections 53-272 and 53-275. That order did not suspend the execution of the sentence for a period of one year, or for any definite time. It suspended the execution of the sentence for all time, but upon the condition that the defendant keep the peace and not violate the law for one year. If the defendant had kept that condition, then the court was bound by that condition and could not after that year of good behavior have revoked the suspension and required the defendant to serve the sentence. In such case the better, though not essential, practice is for the defendant to show to the court

that he has performed the condition of the suspension and obtain an order of complete discharge.

Section 19-272 of the Code provides than no court shall suspend the execution of a judgment in a criminal case "except when authorized by statute."

Section 53-272 authorizes the suspension of imposition or execution of sentence during good behavior. Inherent in that optional authority is the power of the court to attach such reasonable terms and conditions to the suspension as it may deem proper. Such terms and conditions are probation only in the sense that they require the defendant to observe a specified course of conduct; but they are not the supervised probation referred to in the statute. If no period of supervised probation is added to the suspension of the sentence, then under the terms of section 53-275 the only limitation upon the time for revocation of the suspension is the maximum period for which the defendant mght originally have been sentenced.

As stated in the *Richardson Case*, the probation statutes are highly remedial and should be liberally construed. They afford to trial courts a valuable means of bringing about the rehabilitation of offenders against the criminal laws. They have been and are being effectively used by the courts for that purpose. In order that the effective use of probation be not impaired it is important that those to whom it is granted shall know that its terms and conditions are to be strictly observed; and it is likewise important that the power of the court to revoke for breach of its terms and conditions be not restricted beyond the limitations required by the statutes.

This case is an example of an attempt to abuse the privilege. Within six months after the suspension of his sentence this defendant again violated the law and two months later he twice again violated the law. He thereby breached the conditions on which his sentence was suspended and he had no further right to be at liberty under that suspension. It would be unfortunate if the court could not revoke his suspension because his breach of faith was not discovered within the year within which he promised to behave. We do not think that either the letter or the spirit of the probation law sets up that limitation.

The judgment below is

*Affirmed.*

SPRATLEY, J., dissenting.

I cannot bring my mind to assent to the reasoning or conclusion of the majority opinion in this case. As I see it, it has fallen into error, first by failing fully to recite and consider all of the material facts and proceedings; and, second, by ignoring words of a plain, simple and unambiguous statute. It has added a qualification to the provisions of the statute, and thus given effect to what it thinks the legislature ought to have done rather than to what the legislature said should be done.

The facts of the case are simple and uncontradicted. Yet they are not as accurately stated in the opinion, as I think a proper consideration of the record requires. Dyke was found guilty of involuntary manslaughter; and after reference to and report by a probation officer, he was, on April 25, 1950, fined and sentenced to twelve months in jail, but the jail sentence was suspended, and the defendant placed *"upon his good behavior for a period of one year from this date, upon condition that he keep the peace and dignity and not violate any of the laws* of the Commonwealth of Virginia or the County of Norfolk, *for a period of one year from this date;"* and the case was *"continued in order to give the defendant time to pay* the aforesaid fine and costs." (Italics added).

On June 4, 1951, more than twelve months after his sentence was suspended, the court entered judgment on the rule against Dyke in the following language:

"It appearing to the Court that the defendant, Francis Woodrow Dyke, has violated the terms of the *probation order,* it is ordered that his *probation period* be, and the same is *hereby revoked."* (Italics added.)

It will be noted that the trial court did not revoke the *suspension of judgment* against Dyke. It expressly revoked "his probation period."

The conditions and limitations upon the *right of a court to suspend a sentence* are stated in § 53-272, Code of 1950. So far as pertinent, it provides that after a plea, a verdict or a judgment of guilty, "the court *may suspend* the imposition or the *execution* of *sentence* or commitment, *and may also place the defendant on probation under the supervision of a probation officer,* during good behavior, for such time and under such conditions of probation as the court shall determine." Acts 1938, page 189. (Italics added). This Code section, except for

punctuation, is in the exact language of the first paragraph of section 2, Acts 1918, chapter 349, page 529.

The power of a court to *revoke* a *suspended sentence* is provided by § 53-275, Code of 1950, which, so far as pertinent, reads as follows:

"The court *may,* for any cause deemed by it. sufficient, *revoke the suspension of sentence and any probation, if the defendant be on probation, and cause the defendant to be arrested and brought before the court at any time within the probation period, or if no probation period has been prescribed then within the maximum period for which the defendant might originally have been sentenced* to be imprisoned, * * *." Acts 1938, page 189. (Italics added).

This Code section arose from an. amendment of the second paragraph of Acts 1918, page 529, which originally read as follows:

"The court may revoke the suspension of sentence and cause the defendant to be arrested and brought before the court at any time within the probation period, or within the maximum period for which the defendant might originally have been sentenced to be imprisoned, * * *."

Prior to its amendment in 1938, two cases involving the provisions of the 1918 Act came before this court for decision, *Richardson* v. *Commonwealth,* 131 Va. 802, 109 S. E. 460, and *White* v. *Commonwealth,* 170 Va. 641, 196 S. E. 610. In each of these cases sentence was suspended "during the good behavior of the accused." No period of probation was prescribed. In the first case, the defendant was, subsequent to the suspension of his sentence and after the expiration of the maximum period for which he might originally have been sentenced to be imprisoned, convicted of violation of the law. In the second case, the defendant was, subsequent to the suspension of his sentence, on two occasions after the expiration of the maximum period for which he might originally have been sentenced to be imprisoned, convicted of violations of the law. Notwithstanding those facts, the trial court in each case revoked the suspension of sentence.

Upon appeal in the *Richardson Case, supra,* two questions arose—first, whether the trial court had the *right* to *suspend* the execution of sentence; and, second, whether it had *power* to *revoke* the suspension of sentence, since no definite period of probation had been prescribed and the maximum period for which

the defendant had been originally sentenced had elapsed before the rule to show cause was issued. This led to a consideration of the statutory rights and powers conferred on the court by section 2 of the 1918 Act.

In that case Judge Prentis said that the first paragraph of section 2 of the 1918 Act relating to the right to suspend sentence presented two alternatives, in the discretion of trial judge:

"(1) That the convicted person might be *placed on probation*—that is, discharged on condition that he would be of good behavior, *either with or without supervision and without any express limitation of the period during which this probation should continue*; (2) There might be such a *suspension of the sentence either with or without the supervision of a probation officer for a definite period until the further order of the court*." 131 Va. at page 811. (Italics added).

The alternatives mentioned clearly give ample authority to the court to suspend the imposition or the execution of sentence, as well as the power to determine the conditions imposed in each case.

Referring to the first clause in the first sentence of the second paragraph of the 1918 Act relating to the power to revoke suspension of sentence, it was said:

"While the precise meaning of this clause is not perfectly apparent, *its purpose to limit the period within which the suspension order can be revoked is manifest.* It is clear that *within such limited period* the court is expressly authorized to revoke the suspension and impose the penalty, but not thereafter. This prescribed and limited period is expressed in the alternative— that is, the court may revoke the suspension either at any time within the probation period, or within the maximum period for which the defendant might originally have been sentenced to imprisonment. The clause would more clearly express its meaning if the word 'or' were followed by the words, 'if no probation period has been prescribed then.' With this interpolation the meaning of the statute would be perfectly clear." 131 Va. page 811. (Italics added).

In conclusion it was significantly asked: "If the court fails to prescribe the period of probation in the suspending order, then the statute operates, determines the period and limits the jurisdiction of the court to revoke the suspension to the maximum

period for which the accused could originally have been imprisoned." 131 Va. page 813.

In *White* v. *Commonwealth, supra,* Mr. Justice Gregory quoted with approval the language of Judge Prentis in the *Richardson Case, supra,* and repeated his suggestion that the legislature should clarify the meaning of the statute with respect to the limitation of the period within which the power to revoke might be exercised.

In 1938, Acts of 1938, page 189, the legislature adopted the suggestion made in the above cited cases and proceeded to clarify the prescribed and limited period under which the court is authorized to revoke a suspension of sentence. It accepted Judge Prentis' construction of paragraph one of section 2 of the Act of 1918, (§ 53-272, Code of 1950), as to the right of the court to exercise the two alternatives mentioned; but amended the second paragraph of the Act of 1918, now Code, section 53-275, as to its power to revoke such suspension. It substituted, as we have seen, the words "The court may, for any cause deemed by it sufficient, revoke the suspension of sentence and any probation, if the defendant be on probation, and cause the defendant to be arrested and brought before the court at any time within the probation period, or if no probation period has been prescribed then within the maximum period for which the defendant might originally have been sentenced to be imprsoned, * * *" for the words used in the beginning of the second paragraph of section 2 of the Act of 1918.

In the amendment of 1938 the adjectives "any" and "no," qualifying "probation" are significant and comprehensive. In ordinary use and common acceptation, "any" means "one or all," or "one indifferent out of a number." "No" means "not any." It "denotes complete absence of what is named." Webster's New International Dictionary, 2d Ed.

Emphasis is given to the foregoing definition by the syntax of the sentence in which, the words are employed and by the punctuation used.

The prescribed and limited power to revoke suspension of sentence, as Judge Prentis referred to that power, is expressly confined by Code, § 53-275, to two instances. In one instance, where there has been "any probation," and the defendant is still "on probation," the power is limited to "any time within the probation period;" and in the second, where "no probation

period'' has been prescribed, it is limited to the maximum period stated.

The court, of course, can determine the duration of its power under the statute by prescribing the duration of the probation period, that is, it may expressly place the defendant upon probation for the full period for which he might have been sentenced or for a lesser period; but in the event of probation, the power of the court to revoke is restricted to the period of probation.

That the trial court did recognize that it had specified ''a probation period'' in its first order is apparent from the language of its suspending order of June 4th. If suspension of sentence and probation are different as the court says, then a suspension of a probation period does not mean a suspension of sentence. The court may have meant to revoke the suspension of sentence; but it does not say so and the court record imports a verity. The probation period of Dyke had expired. It could not be called back to life. Its attempted retraction was necessarily a nullity.

Code, section 53-278 is in the same language as section 4 of the Act of 1918, without change, and was in effect when the *Richardson* and *White Cases, supra,* were decided. It simply provides that ''every probation officer shall thoroughly investigate all cases referred to him for investigation by any court in which he is serving and shall report thereon to the court,'' and prescribes his duties. This section applies only when a defendant is placed on probation under the supervision of a probation officer. It has no application when the defendant is placed on probation without supervision. It has no connection with the question whether a defendant has been placed on probation for a specified period of time.

The Commonwealth, in its brief, contends ''that the defendant was not placed on probation and that no probation period was fixed by the trial court, and that, therefore, the trial court could revoke the suspended sentence at any time within five years (the maximum period for which the defendant might originally have been sentenced.)''

The contention is so clearly fallacious that the court undertakes to arrive at its conclusion by holding that the probation or probation period granted Dyke was not within the meaning of Code, sections 53-272 and 53-275. In doing so, it resorts to an argument which embodies subtle reasoning, ignores the language

of those statutes, and requires he interpolation of a qualification not made by the statute.

It will hardly be disputed that if the defendant had observed the terms of his parole for the year specified, the court would have had·thereafter no right to revoke the suspension of sentence. Or suppose he had committed a misdemeanor after the expiration of his year of probation? The answer is that he was not then on probation, and consequently had not violated his parole. These answers point to the inevitable conclusion that the defendant was placed on probation for a definite period. That is what the trial court thought, if its orders are to be considered.

In this connection, let us consider certain expressions of the majority opinion. This is said: "It has been noted, however, with respect to the first alternative, that the statute (now section 53-272) provides only for probation with supervision and for prescribing the time and conditions therefor." With this I cannot agree. The statute says "The court may suspend the imposition or the execution of sentence, *and may also place* the defendant on probation under the supervision of a probation officer." (Italics added). Whether or not supervision by a probation officer should be required is plainly optional with the court.

Accordingly, I agree that "Section 53-272 authorizes the suspension of imposition or execution of sentence during good behavior," and that "Inherent in that optional authority is the power of the court to attach such reasonable terms and conditions as to the suspension as it may deem proper; and may also place the defendant on probation under the supervision of a probation officer.

The distinction between suspension of sentence and probation does not affect the question whether the defendant is placed on a period of probation. The period of probation relates to time and not to character of probation. The suspension of sentence relieves from custody.

In summation, the facts and the law applicable thereto may be briefly stated as follows:

On February 28, 1950, Dyke was found guilty of involuntary manslaughter, imposition of sentence was deferred, and the case referred to a probation officer for an investigation and a presentence report. On April 25, 1950, after hearing a report from the probation officer, the court sentenced the defendant to be

confined in jail for twelve months; but suspended the sentence and placed him upon his "good behavior for a period of one year" from that date, upon condition that he not violate the law within the one-year period. Although the services of a probation officer were available, the court did not require him to supervise the defendant during the probation period.

On May 2, 1951, an order was entered commanding the defendant to appear before the court on May 7, 1951. On June 4, 1951, thirteen months and nine days after the date of the suspension order, the court found Dyke guilty of violating the terms of the "probation order," and ordered that "his probation" be revoked.

Code, § 53-272 authorizes suspension of sentence under certain circumstances and prescribes the conditions under which it may be exercised. Code, § 53-275 sets out two sets of circumstances in which suspension of sentence may be revoked and prescribes and limits the period within which the power to revoke may, in each instance, be exercised. Where there has been "suspension of sentence and any probation," the defendant, if he "be on probation" may be brought before the court "at any time within the probation period." On the other hand, where "no probation period has been prescribed then" the defendant may be arrested and brought before the court within the maximum period for which he might originally have been sentenced.

No authority is given for revocation of suspension where defendant has been placed on probation and the probation period has expired. Under such circumstances, it is obvious that he could not be brought before the court "at any time within the probation period."

The facts of this case fit in perfectly with the first set of circumstances. At the risk of reiteration, I repeat there was a suspension of sentence and a specific period of probation fixed. That period expired on April 25, 1951. Consequently, Dyke was not "on probation" on May 2, May 7, or June 4, 1951, nor was he brought before the court "at any time within the probation period."

As I read the majority opinion, the trial court had power to revoke the suspension of Dyke's sentence at any time within five years after April 25, 1950. It disregards the language of the legislature setting out a distinction between suspension with probation and suspension without probation. Had the legisla-

ture intended to provide that suspension might be revoked at any time within the maximum period for which the defendant might originally have been sentenced, it would have made no reference to the circumstances of probation. I cannot regard the phrases of section 53-275 relating to the effect of probation as mere surplusage.

The defendant is entitled to no sympathy for breaking the condition on which his sentence was suspended, nor is the failure of the probation officer to report the breach to the court to be commended. The failure of the court to prescribe probation for a longer period may have been a mistake of judgment which it regrets, but which it is now too late to correct.

Much more could be said, but this opinion is already too long. I, therefore, content myself with an expression of philosophy in the same vein as that of my opposing brethren, but running in a different direction,

It may be unfortunate, save as to the defendant, to hold that the court had no right to revoke defendant's suspension for breach of faith because it was not discovered within the year; but it would be more unfortunate to deny him a fair and impartial hearing according to the law.

For the reasons assigned, I hold that the trial court, under the circumstances, had no power to revoke defendant's suspension of sentence, after the expiration of his period of probation, or to revoke an expired period of probation, and that consequently the judgment complained of should be reversed and the defendant released from custody.

MILLER, J., concurs in this dissent.