# Richmond

## MOFFETT DOTSON WILBORN V. JOHN G. SAUNDERS, CITY SERGEANT, ETC.

March 10, 1938.

Present, All the Justices.

The opinion states the case.

*Tuck & Mitchell* and *Percy S. Smith,* for the plaintiff in error.

*Abram P. Staples, Attorney-General* and *Ralph H. Ferrell, Jr., Special Assistant,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

On February 22, 1929, Moffett D. Wilborn was found guilty on three indictments and sentenced by the Circuit Court of Mecklenburg county to serve a term in the penitentiary on each indictment. The periods of confinement totaled five years, and were ordered to run consecutively and not concurrently.

On March 11, 1929, the same Moffett D. Wilborn, who had previously been convicted in the Circuit Court of Brunswick county on three other indictments, was sentenced by that court to serve three consecutive terms totaling three years in the penitentiary.

On December 20, 1930, Hon. John Garland Pollard, the then Governor of Virginia, granted Moffett D. Wilborn a conditional pardon, reading as follows:

"I, JNO. GARLAND POLLARD, Governor of the Commonwealth of Virginia, have by virtue of authority vested in me, pardoned, and do hereby pardon the said Moffett Wilborn and do order that he be forthwith discharged from imprisonment, but upon the terms and conditions following, namely:

"That he will conduct himself in the future as a good, law-abiding citizen; upon the further condition that he is to report to E. C. Lacy, Clerk of the Court, Halifax, Va., immediately upon his release and thereafter each month as required by said Clerk or his successor in office, until November 25, 1933, and upon the further condition that the right to revoke this pardon at any time is expressly reserved to the Governor.

"And if he should violate any of the conditions or if ever again he be found guilty of a violation of the penal laws of the Commonwealth this pardon shall be null and void.

"Given under my hand and under the Lesser Seal of the Commonwealth at Richmond, this 20th day of December, in the year of our Lord one thousand, nine hundred and thirty and in the 155th year of the Commonwealth."

On February 13, 1937, the same Moffett D. Wilborn was convicted in the police court of the city of Richmond for violating the penal laws of the Commonwealth. On appeal to the Hustings Court of the city, the judgment of the police court was affirmed and the accused was fined $75, and sentenced to thirty days in jail. The Hon. George C. Peery, then Governor, on being advised of the conviction of Moffett D. Wilborn in the Hustings Court, revoked the pardon, and ordered the prisoner to be returned to the peni-

tentiary to serve such parts of the sentences as had not been served on December 20, 1930, the date the conditional pardon was granted.

On April 21, 1937, while Moffett D. Wilborn was in the custody of John D. Saunders, sergeant of the city of Richmond, he filed, in the Circuit Court of the city, a petition for a writ of *habeas corpus,* alleging that the governor had no power to revoke the pardon. After a full hearing, the Circuit Court refused to grant the writ, and dismissed the petition; thereupon the prisoner obtained this writ of error.

The dominant question presented, is whether the Governor of Virginia has power to revoke a pardon for violation of conditions appearing on its face, after the expiration of the term for which the prisoner was sentenced.

Prior to 1872, there seems to have been some doubt whether the governor was authorized to grant conditional pardons at all. See sec. 7 and pertinent paragraphs, Const. of 1776; Art. IV, sec. 4, Const. of 1830; Art. V, sec. 5, Const. of 1850; *Commonwealth* v. *Fowler,* 4 Call (8 Va.) 35; *Ball* v. *Commonwealth,* 8 Leigh (35 Va.) 726; dissenting opinion in *Lee* v. *Murphy,* 22 Gratt. (63 Va.) 789, 12 Am. Rep. 563.

The majority opinion in *Lee* v. *Murphy, supra,* removed this doubt and held: "The power of granting conditional pardons must reside somewhere; and by common consent of all the States it is vested in the executive department. It has been well said that the authority to suspend the operation of laws is a privilege of too high a nature to be committed to many hands, or to those of any inferior officer in the State. If the chief magistrate can be trusted with the power of absolute and unconditional pardon, he is certainly a safe depository of the qualified power. Cases are constantly arising which call for the exercise of the executive clemency in a modified form, by reason of circumstances subsequently occurring, or which could not have been taken into consideration by the courts and juries. Even the public good, which is the ultimate end of all punishment should be substituted for that which was enforced

by the sentence of the law." See *Edwards* v. *Commonwealth,* 78 Va. 39, 49 Am. Rep. 377.

There has been no material change in the pardoning powers of the executive in the Constitutions adopted since 1872. See sec. 73 of the Constitution as amended in 1928.

■ Pursuant to constitutional provisions in most of the states, the executive is authorized to grant pardons and to annex thereto any condition subsequent, provided such conditions are not immoral, illegal or impossible of performance. When a pardon with such conditions annexed is accepted, they become binding upon the prisoner.

The prisoner concedes the general rule to be as stated, but contends that the Governor has no power to revoke a pardon for breach of conditions after the expiration of the term for which the prisoner was originally sentenced.

A few cases in other jurisdictions support this contention. One of the reasons advanced therefor is, that it is a judicial function to fix the punishment for violation of the criminal laws within the limits prescribed by the legislature, and that while the executive has power to relieve the prisoner from serving part or all of his term of confinement, the grant of a pardon, absolute or conditional, is an act of grace, a gift of all or part of the term, and only that part of the term that remains at the time of the breach of the condition is affected by revoking the gift. Hence, if the violation of the condition occurs after the full expiration of the original sentence, no part of the gift remains to be recalled. See *Ex parte Prout,* 12 Idaho 494, 86 P. 275, 5 L. R. A. (N. S.) 1064, 10 Ann. Cas. 199; *Woodward* v. *Murdock,* 124 Ind. 439, 24 N. E. 1047; *People* v. *Cummings,* 88 Mich. 249, 50 N. W. 310, 14 L. R. A. 285; *State* v. *Hunter,* 124 Iowa 569, 100 N. W. 510, 104 Am. St. Rep. 361.

■ The rule recognized and followed in the majority of jurisdictions is, that a person is bound by the conditions attached to a pardon. When he has accepted it, and has been released from prison by virtue of such pardon, and subsequently violates or fails to perform any of the condi-

tions, the pardon becomes void, and he is subject to re-arrest, and to undergo the punishment imposed by the original sentence, or so much thereof as he has not served at the time of his release. *State* v. *Horne,* 52 Fla. 125, 42 So. 388, 391, 7 L. R. A. (N. S.) 719; *Ex parte Kelly,* 155 Cal. 39, 99 P. 368, 20 L. R. A. (N. S.) 337; *Ex parte Davenport,* 110 Tex. Crim. 326, 7 S. W. (2d) 589, 60 A. L. R. 1403, note 1410; *State* v. *Yates,* 183 N. C. 753, 111 S. E. 337; *Crooks* v. *Sanders,* 123 S. C. 28, 115 S. E. 760, 28 A. L. R. 940; 20 R. C. L. 555; 46 C. J. 1202; *In re McKinney,* 3 W. W. Harr. (33 Del.) 434, 138 A. 649.

■ "The law does not contemplate that the court in fix-ing the punishment shall also fix the beginning and ending of the period during which the imprisonment shall be suf-fered. The time fixed for executing a sentence, or for the commencement of its execution, is not one of its essential elements, and, strictly speaking, is not a part of the sen-tence at all. The essential portion of the sentence is the punishment, including the kind of punishment and the amount thereof, without reference to the time when it shall be inflicted. The sentence, with reference to the kind of punishment and the amount thereof, should, as a rule, be strictly executed. But the order of the court with refer-ence to the time when the sentence shall be executed is not so material. Expiration of time without imprisonment is in no sense an execution of the sentence." *State* v. *Horne,* *supra.*

■ Penal laws are adopted and enforced for the preservation of peace and good order of the Commonwealth. A violator is made to suffer for his wrong to society and to serve as an example to deter others who may desire to do likewise. It is a judicial function to fix the amount of punishment within the limits prescribed by the legislature. The Commonwealth is interested not only in the preserva-tion of peace and good order, but in reformation of the criminal, so that he may be restored to a useful place in society and be self-sustaining thereafter. To this end there are now statutory provisions authorizing trial judges,

in some cases, to place the convicted person on probation or parole for a fixed period, upon certain conditions. (See sec. 1922b and sec. 4486 of the 1936 Code.) No such statute was in force at the time of the decision in *Scott* v. *Chichester,* 107 Va. 933, 60 S. E. 95, 16 L. R. A. (N. S.) 304. In *Richardson* v. *Commonwealth,* 131 Va. 802, 109 S. E. 460, the statute was held to be no infringement upon the pardoning power imposed upon the executive by the Constitution.

"By the Constitution of Virginia, the governor is empowered to grant reprieves and pardons *after conviction,* except when the prosecution has been carried on by the house of delegates, and to remit fines and penalties in such cases and under such rules and regulations as may be prescribed by law. He is also empowered to remove political disabilities consequent upon conviction for offences, and to commute capital punishment. Const., Art. IV, sec. 5.

"It will thus be seen that certain restrictions are here imposed upon the exercise of the pardoning power which are not found in the laws of England or of the United States. But subject to these restrictions, the effect of the governor's pardon must be determined by the same rules which apply to a pardon by the British crown or by the president of the United States." *Edwards* v. *Commonwealth, supra.*

The power of the governor as applied to the conditional pardon now under consideration, is not restricted by any constitutional or statutory provision. The condition that the prisoner shall not again be convicted of a violation of the penal laws of the Commonwealth is not illegal, immoral, or impossible to be performed. To hold otherwise would place a limitation or restriction upon the chief executive of the State in the exercise of clemency, which has not been done by constitutional mandate or act of the legislature.

The prisoner contends that during the period from December 20, 1930, to November 25, 1933, in which he was ordered to report to E. C. Lacy, clerk of the Circuit Court of Hali-

fax county, he was still in custody and should be given credit therefor.

The conditions in the pardon are clear and unambiguous—i. e., (1) That he will report to E. C. Lacy, clerk of the Circuit Court of Halifax county immediately upon his release, and each month thereafter as required by the clerk, or his successor in office, until November 25, 1933; (2) That he will conduct himself as a good law abiding citizen, and should he violate any of the conditions, and if ever again he be found guilty of a violation of the penal laws of the Commonwealth, the pardon should become null and void. The intention of the Governor in granting the conditional pardon is clearly shown in a letter written to Moffett D. Wilborn and others on the day the pardon was granted. This is said: "I am granting this man a conditional pardon upon the express condition that should he further violate the law, his pardon will be null and void, and he will have to serve the remainder of his sentence." The prisoner accepted the pardon with the conditions, thus clearly stated, annexed.

A pardon is granted on the theory that the convict has seen the error of his ways, that society will gain nothing by his further confinement, and that he will conduct himself in the future as an upright, law-abiding citizen. However, it is fitting, under some circumstances, that certain conditions insuring good conduct should be required of the convict for this opportunity to escape the service of the full penalty prescribed for his former crimes. A future violation of the penal law, whether such takes place during the period that the pardoned convict was originally sentenced or thereafter, demonstrates that the time actually served by the convict was not enough to impress upon him the error of his old course of conduct, and that the pardon should never have been granted.

The policy of the State, as expressed in the probation or parole statutes, denies to the paroled prisoner credit for the time that he is at large on parole. Reporting to the clerk was simply complying with one of the condi-

tions imposed, and in no sense should this period be treated as a part of the execution of the sentences imposed by the court. (See Code sec. 1922b.)

In *Wright* v. *Youell,* 160 Va. 925, 168 S. E. 339, we held that in the absence of statute, and where the order of the court did not state whether two separate and distinct terms of confinement should run consecutively or concurrently, they ran concurrently. The prisoner contends that inasmuch as the judgments of the Circuit Court of Brunswick county do not state whether the terms of confinement as fixed by that court should run consecutively or concurrently with the terms of confinement as fixed by the Circuit Court of Mecklenburg county, the rule announced in *Wright* v. *Youell* should apply. This contention ignores the provisions of the statutes.

The prisoner stood, on February 22, 1929, convicted on six indictments, three pending in the Circuit Court of Brunswick county, and three pending in the Circuit Court of Mecklenburg county, with no sentence pronounced against him on any indictment. On that date, sec. 4786 provided that, "When any person is convicted of two or more offenses, before sentence is pronounced for either, the confinement to which he may be sentenced upon the second, or any subsequent conviction, shall commence at the termination of the previous term or terms of confinement." It follows, therefore, that the total period of confinement on the six indictments is eight years.

The prisoner is entitled to credit, as provided by law, for the time spent in jail awaiting the final determination of the cases pending against him, and to credits as provided by Code, sec. 5017, for faithfully observing the rules and regulations of the prison, during the time he was subject to such rules and regulations. In other words, on the revocation of his pardon, he is remanded to the penitentiary as if no pardon had ever been granted.

For the reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*