## Richmond

RICHARD PERRY LOVING, ET AL. v. COMMONWEALTH OF VIRGINIA.

March 7, 1966.

Record No. 6163.

Present, All the Justices.

*Bernard S. Cohen* and *Philip J. Hirschkop (David Carliner; Lainof, Cohen & Cohen,* on brief), for the plaintiffs in error.

*R. D. McIlwaine, III, Assistant Attorney General (Robert Y. But-*

*ton, Attorney General; Kenneth C. Patty, Assistant Attorney General,* on brief), for the Commonwealth.

CARRICO, J., delivered the opinion of the court.

On January 6, 1959, Richard Perry Loving and Mildred Jeter Loving, the defendants, were convicted, upon their pleas of guilty, under an indictment charging that "the said Richard Perry Loving being a White person and the said Mildred Delores Jeter being a Colored person, did unlawfully and feloniously go out of the State of Virginia, for the purpose of being married, and with the intention of returning to the State of Virginia and were married out of the State of Virginia, to-wit, in the District of Columbia on June 2, 1958, and afterwards returned to and resided in the County of Caroline, State of Virginia, cohabiting as man and wife." (Code, § 20-58.)[1]

The trial court fixed "the punishment of both accused at one year each in jail." (Code, § 20-59)[2] The court suspended the sentences "for a period of twenty-five years upon the provision that both accused leave Caroline County and the state of Virginia at once and do not return together or at the same time to said county and state for a period of twenty-five years."

On November 6, 1963, the defendants filed a "Motion to Vacate Judgment and Set Aside Sentence" alleging that they had complied with the terms of their suspended sentences but asserting that the statute under which they were convicted was unconstitutional and that the sentences imposed upon them were invalid.

The court denied the motion by an order entered on January 22, 1965, and to that order the defendants were granted this writ of error.

There is no dispute that Richard Perry Loving is a white person and that Mildred Jeter Loving is a colored person within the meaning of Code, § 20-58. Nor is there any dispute that the actions of the defendants, as set forth in the indictment, violated the provisions of Code, § 20-58.

---

[1] "§ 20-58. *Leaving State to evade law.*—If any white person and colored person shall go out of this State, for the purpose of being married, and with the intention of returning, and be married out of it, and afterwards return to and reside in it, cohabiting as man and wife, they shall be punished as provided in § 20-59, and the marriage shall be governed by the same law as if it had been solemnized in this State. The fact of their cohabitation here as man and wife shall be evidence of their marriage."

[2] "§ 20-59. *Punishment for marriage.*—If any white person intermarry with a colored person, or any colored person intermarry with a white person, he shall be guilty of a felony and shall be punished by confinement in the penitentary for not less than one nor more than five years."

The sole contention of the defendants, with respect to their convictions, is that Virginia's statutes prohibiting the intermarriage of white and colored persons are violative of the Constitution of Virginia and the Constitution of the United States. Such statutes, the defendants argue, deny them due process of law and equal protection of the law.

The problem here presented is not new to this court nor to other courts, both state and federal, throughout the country. The question was most recently before this court in 1955, in *Naim* v. *Naim*, 197 Va. 80, 87 S. E. 2d 749, remanded 350 U. S. 891, 100 L. ed. 784, 76 S. Ct. 151, aff'd. 197 Va. 734, 90 S.E. 2d 849, app. dism. 350 U.S. 985, 100 L. ed. 852, 76 S. Ct. 472.

In the *Naim* case, the Virginia statutes relating to miscegenetic marriages were fully investigated and their constitutionality was upheld. There, it was pointed out that more than one-half of the states then had miscegenation statutes and that, in spite of numerous attacks in both state and federal courts, no court, save one, had held such statutes unconstitutional. The lone exception, it was noted, was the California Supreme Court which declared the California miscegenation statutes unconstitutional in *Perez* v. *Sharp*, 32 Cal. 2d 711, 198 P. 2d 17 (sub nom. *Perez* v. *Lippold*).

The *Naim* opinion, written for the court by Mr. Justice Buchanan, contains an exhaustive survey and citation of authorities, both case and text from both state and federal sources, upon the subject of miscegenation statutes. It is not necessary to repeat all those citations in this opinion because the defendants concede that the *Naim* case, if given effect here, is controlling of the question before us. They urge us, however, to reverse our decision in that case, contending that the decision is wrong because the judicial authority upon which it was based no longer has any validity. Our inquiry must be, therefore, whether a change in the *Naim* decision is required.

The defendants say that the *Naim* opinion relied upon *Plessy* v. *Ferguson*, 163 U. S. 537, 41 L. ed. 256, 16 S. Ct. 1138, but argue that the United States Supreme Court reversed the *Plessy* decision in *Brown* v. *Board of Education*, 347 U. S. 483, 98 L. ed. 873, 74 S. Ct. 686.

The *Plessy* case, decided in 1896, involved an attack upon the constitutionality of a Louisiana statute requiring separate railway carriages for the white and colored races. The statute was upheld by the Supreme Court under the "separate but equal" doctrine there enunciated by the court.

In the *Brown* case, decided in 1954, the Supreme Court ruled "that in the field of public education the doctrine of 'separate but equal' has no place" and that "Any language in *Plessy* v. *Ferguson* contrary to this finding is rejected." 98 L. ed., at p. 881.

The *Plessy* case was cited in the *Naim* opinion to show that the United States Supreme Court had made no decision at variance with an earlier holding by the Tenth Circuit Court of Appeals in *Stevens* v. *United States*, 146 F. 2d 120, that "a state is empowered to forbid marriages between persons of African descent and persons of other races or descents. Such a statute does not contravene the Fourteenth Amendment."

The *Naim* opinion contained a quotation from the *Plessy* case that "Laws forbidding the intermarriage of the two races . . . have been universally recognized as within the police power of the state." Nothing was said in the *Brown* case which detracted in any way from the effect of the language quoted from the *Plessy* opinion. As Mr. Justice Buchanan pointed out in the *Naim* opinion, the holding in the *Brown* case, that the opportunity to acquire an education "is a right which must be made available to all on equal terms," cannot support a claim for the intermarriage of the races or that such intermarriage is a " right which must be made available to all on equal terms."

The United States Supreme Court itself has indicated that the *Brown* decision does not have the effect upon miscegenation statutes which the defendants claim for it. The *Brown* decision was announced on May 17, 1954. On November 22, 1954, just six months later, the United States Supreme Court denied certiorari in a case in which Alabama's statute forbidding intermarriage between white and colored persons had been upheld against the claim that the statute denied the Negro appellant "her constitutional right and privilege of intermarrying with a white male person," and that it violated the Privileges and Immunities, the Due Process and the Equal Protection Clauses of the Fourteenth Amendment. *Jackson* v. *State*, 37 Ala. App. 519, 72 So. 2d 114, 260 Ala. 698, 72 So. 2d 116, cert. denied 348 U. S. 888, 99 L. ed. 698, 75 S. Ct. 210.

The defendants also say that the *Naim* opinion relied upon *Pace* v. *Alabama*, 106 U. S. 583, 27 L. ed. 207, 1 S. Ct. 637, but contend that the United States Supreme Court overruled the *Pace* decision in *McLaughlin* v. *Florida*, 379 U. S. 184, 13 L. ed. 2d 222, 85 S. Ct. 283.

The *Pace* case, decided in 1883, involved an attack upon the con-

stitutionality of an Alabama statute imposing a penalty for adultery or fornication between a white person and a Negro. Another statute provided a lesser penalty "If any man and woman live together in adultery or fornication." A white woman and Pace, a Negro, were convicted and sentenced under the first statute "for living together in a state of adultery or fornication." Pace appealed, claiming that the statute under which he had been convicted was violative of the Fourteenth Amendment. The court rejected this claim, holding that "Whatever discrimination is made in the punishment prescribed in the two sections is directed against the offense designated and not against the person of any particular color or race." 27 L. ed., at p. 208.

In the *McLaughlin* case, decided in 1964, the Supreme Court had under review a Florida statute which made it unlawful for a white person and a Negro, "not married to each other," to "habitually live in and occupy in the night time the same room." The statute in dispute provided for a different burden of proof and a different penalty than were provided by other statutes relating to adultery and fornication generally. Florida sought to sustain the validity of the statute under the holding in *Pace* v. *Alabama.* The court, however, ruled the Florida statute invalid, saying of *Pace* v. *Alabama* that it "represents a limited view of the Equal Protection Clause which has not withstood analysis in the subsequent decisions of this court." 13 L. ed. 2d, at p. 226.

The *Pace* case, like the *Plessy* case, was cited in the *Naim* opinion to show that the United States Supreme Court had made no decision at variance with the rule that a state may validly forbid interracial marriages. The *McLaughlin* decision detracted not one bit from the position asserted in the *Naim* opinion.

Both parties to the *McLaughlin* controversy cited Florida's miscegenation statute, making it unlawful for a white person to marry a Negro. McLaughlin contended that the miscegenation statute was unconstitutional because it prevented him from asserting, against the cohabitation charge, the defense of common law marriage. Florida argued that it was necessary that its cohabitation statute be upheld so as to carry out the purposes of its miscegenation statute which, it contended, was "immune from attack under the Equal Protection Clause." The court ruled that it was unnecessary to consider McLaughlin's contention in this respect because the court was holding in his favor on the cohabitation statute. As for Florida's contention,

the court said that, for purposes of argument, the constitutionality of the miscegenation statute would be assumed and that it was deciding the case "without reaching the question of the validity of the State's prohibition against interracial marriage." 13 L. ed. 2d, at p. 230.

The defendants direct our attention to numerous federal decisions in the civil rights field in support of their claims that the *Naim* case should be reversed and that the statutes under consideration deny them due process of law and equal protection of the law.

We have given consideration to these decisions, but it must be pointed out that none of them deals with miscegenation statutes or curtails a legal truth which has always been recognized—that there is an overriding state interest in the institution of marriage. None of these decisions takes away from what was said by the United States Supreme Court in *Maynard* v. *Hill*, 125 U. S. 190, 31 L. ed. 654, 657, 8 S. Ct. 723:

"Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of a people than any other institution, has always been subject to the control of the Legislature."

The defendants also refer us to a number of texts dealing with the sociological, biological and anthropological aspects of the question of interracial marriages to support their argument that the *Naim* decision is erroneous and that such marriages should not be forbidden by law.

A decision by this court reversing the *Naim* case upon consideration of the opinions of such text writers would be judicial legislation in the rawest sense of that term. Such arguments are properly addressable to the legislature, which enacted the law in the first place, and not to this, whose prescribed role in the separated powers of government is to adjudicate, and not to legislate.

Our one and only function in this instance is to determine whether, for sound judicial considerations, the *Naim* case should be reversed. Today, more than ten years since that decision was handed down by this court, a number of states still have miscegenation statutes and yet there has been no new decision reflecting adversely upon the validity of such statutes. We find no sound judicial reason, therefore, to depart from our holding in the *Naim* case. According that decision all of the weight to which it is entitled under the doctrine of *stare decisis*, we hold it to be binding upon us here and rule that Code, §§

20-58 and 20-59, under which the defendants were convicted and sentenced, are not violative of the Constitution of Virginia or the Constitution of the United States.

■ We turn now to the other contention of the defendants— that the sentences imposed upon them are unreasonable and void.

It will be recalled that the trial court suspended the sentences of the defendants for a period of twenty-five years upon the condition that they leave the county and state "at once and do not return together or at the same time to said county and state for a period of twenty-five years."

The defendants first say that the effect of the sentences was to banish them from the state. They refer us to the case of *State* v. *Doughtie*, 237 N.C. 368, 74 S. E. 2d 922, where it was held that "banishment . . . is impliedly prohibited by public policy . . . A sentence of banishment is undoubtedly void."

Although the defendants were, by the terms of the suspended sentences, ordered to leave the state, their sentences did not technically constitute banishment because they were permitted to return to the state, provided they did not return together or at the same time.

Thus, we do not agree with the defendants' contention that the sentences are void because they constitute banishment. We do agree with their further contention, however, that the conditions of the suspensions are so unreasonable as to render the sentences void.

The trial court acted under the authority of Code, § 53-272 in suspending the sentences of the defendants. The purpose of this statute is to secure the rehabilitation of the offender, enabling him to repent and reform so that he may be restored to a useful place in society. *Marshall* v. *Commonwealth*, 202 Va. 217, 219, 116 S. E. 2d 270; *Slayton* v. *Commonwealth*, 185 Va. 357, 365-366, 38 S. E. 2d 479; *Wilborn* v. *Saunders*, 170 Va. 153, 160-161, 195 S. E. 723.

To effect this statutory purpose, the courts are authorized to impose conditions upon the suspension of execution or imposition of sentence. But such conditions must be reasonable, having due regard to the nature of the offense, the background of the offender and the surrounding circumstances. *Dyke* v. *Commonwealth*, 193 Va. 478, 484, 69 S. E. 2d 483.

Here, the real gravamen of the offense charged against the defendants, under Code, § 20-58, was their cohabitation as man and wife in this state, following their departure from the state to evade

Virginia law, their marriage in another jurisdiction and their return to Virginia. Without such cohabitation, there would have been no offense for which they could have been tried, notwithstanding their other actions.

When the defendants' sentences were suspended, the purpose which the trial court should reasonably have sought to serve was that the defendants not continue to violate Code, § 20-58. The condition reasonably necessary to achieve that purpose was that the defendants not again cohabit as man and wife in this state. There is nothing in the record concerning the defendants' backgrounds or the circumstances of the case to indicate that anything more was necessary to secure the defendants' rehabilitation and to accomplish the purposes envisioned by Code, § 53-272.

It was, therefore, unreasonable to require that the defendants leave the state and not return thereafter together or at the same time. Such unreasonableness renders the sentences void and they will, accordingly, be vacated and set aside. The case will be remanded to the trial court with directions to re-sentence the defendants in accordance with Code, § 20-59, attaching to the suspended sentences, to be imposed upon the defendants, conditions not inconsistent with the views expressed in this opinion.

In this connection, although it has not been alluded to by either side to this controversy, it should be noted that Code, § 20-59 provides for a sentence in the penitentiary, and not in jail, as called for in the sentencing order of the trial court.

That portion of the order appealed from upholding the constitutionality of Code, §§ 20-58 and 20-59, and the convictions of the defendants thereunder, is affirmed; that portion of said order upholding the validity of the sentences imposed upon the defendants is reversed, and the case is remanded for further proceedings.

*Affirmed in part, reversed in part and remanded.*