## Norfolk

ROBIN LOUISE DEAL

v.

COMMONWEALTH OF VIRGINIA

No. 1990-90-1

Decided September 29, 1992

COUNSEL

Robert D. Hicks (Martin, Hicks & Ingles, Ltd., on brief), for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BRAY, J.**—Robin Louise Deal (defendant) was convicted in a bench trial of "felony embezzlement" and sentenced to "confinement in the penitentiary . . . for . . . fifteen (15) years," nine years of which were suspended "for a period of fifteen (15) years" upon certain "conditions," including "restitution in the amount of $43,000." On appeal, defendant "concedes that the evidence was sufficient" to prove embezzlement "of at least $200.00," but contends that the restitution ordered (i) was not in an amount supported by the record, (ii) was not payable to the proper person, and (iii) was contrary to statute and violated certain of her constitutional rights. We disagree and affirm.

The evidence disclosed that defendant became employed at the Adler Market (market) on June 3, 1987. Richard Montfort (Montfort), owner of the market, recalled that her duties included reconciliation of "each shift's till" against the "printout . . . of the register," calculation of "overages and shortages," maintenance of "general ledgers," payment of accounts, and "generally . . . the bookkeeping end of the business." Additionally, defendant collected and totalled all business receipts and routinely "made up" the deposits into two bank accounts, one for the market's "general business" funds and the other for the proceeds from lottery ticket sales.

During defendant's employment, purchases were recorded on an "electronic cash register" which documented each transaction on duplicate "tapes." The imprinted data included the date and amount of the transaction, categorized the sale, i.e., gasoline, beer, lottery, etc., and totalled both gross receipts and tax. Daily, defendant counted and "verified" the actual receipts with the register tape, recorded the information in "ledgers" and attached one copy of the tape "to the sheets" (the second duplicate tape was filed separately). Absent error, daily register tapes ":should match" with corresponding ledger entries and bank deposits.

Proceeds from the sale of lottery tickets were entered in a "separate" ledger and deposited into a "separate account." A correct balance was of special importance to this account because the funds were regularly subjected to an "electronic sweep" or "transfer" by the "lottery department."

Montfort testified that defendant was the only person continuously employed at the market from May 1, 1989 to March 7, 1990, and served alone as its "bookkeeper" throughout the period. However, while defendant was absent from the market following her wedding on March 7, 1990, Montfort assumed her responsibilities and "reconstructed" the market "books" from March 7, 1990, "backwards to May 1," 1989.

The evidence was uncontradicted that this examination of the market's financial records disclosed recurring deficiencies in daily ledger entries and bank deposits when compared with related register tapes. Ledger records reflected a pattern of repeated downward adjustments in all categories of daily receipts, with the exception of lottery proceeds, and tax collections appropriate to the reduced totals. According to Montfort, these differences regularly totalled approximately $200 per day. In contrast, little or no shortages occurred on those days when defendant was away from the market. Montfort computed "total losses" suffered by the market of $43,215.21 from May 1, 1989 to March 7, 1990, the dates specified in the indictment.

R. E. Lackey (Lackey), a Virginia State Police investigator, also reviewed the financial records of the market and "closely scrutinized" five randomly selected dates. After his examination confirmed Montfort's findings, Lackey interviewed defendant. Initially, she denied any wrongdoing but, once confronted with the documentation, admitted that she "was adjusting the books because of her gambling

problem . . . to cover up not paying for her lottery tickets.'' She denied, however, that ''the shortages were up to around $200.00 per day.''

At the conclusion of the evidence, defendant argued that the record failed to establish an embezzlement of $43,215.21, and the court promised ''careful thought'' to the ''exhibits'' before determining ''restitution.'' Later, at the sentencing hearing, the Commonwealth pursued this issue, and Montfort again testified, restating the losses. Defendant presented no evidence at that hearing and, on motion of the Commonwealth, the restitution was ordered as a condition of a suspended sentence.

█ Following conviction in a criminal proceeding, trial courts are specifically vested with the authority to ''suspend the sentence in whole or part,'' ''suspend [its] imposition'' and ''in addition . . . place the accused on probation,'' all ''under such conditions as the court shall determine.''[1] Code § 19.2-303. Among such conditions, restitution for ''damages or loss'' caused by the offense is expressly recognized and approved in several statutes. See Code §§ 19.2-303, 19.2-305, 19.2-305.1, 19.2-305.2.

█ Code § 19.2-303 provides that the court ''*may* . . . require . . . at least partial restitution to the aggrieved party or parties . . . , under terms and conditions . . . entered . . . by the court.'' (emphasis added). *See also* Code § 19.2-305. If the offense ''resulted in property damage,'' a suspension of sentence or probation *must* be conditioned upon ''partial restitution,'' community service or ''doing that which appears to the court to be feasible under the circumstances'' pursuant to ''a plan'' submitted to the court by a defendant. Code § 19.2-305.1. The court, ''in its discretion, shall determine the amount [of restitution] to be repaid by the defendant and the terms and conditions thereof.'' *Id.*

█ These statutes obviously confer upon trial courts ''wide latitude'' and much ''discretion in matters of suspension and probation . . . to provide a remedial tool . . . in the rehabilitation of criminals'' and, to that end, ''should be liberally construed.'' *Nuckoles v. Commonwealth*, 12 Va. App. 1083, 1085-86, 407 S.E.2d 355, 356 (1991); *Dyke v. Commonwealth*, 193 Va. 478, 484, 69 S.E.2d 483, 486 (1952); *see Grant v. Commonwealth*, 223 Va. 680, 685, 292 S.E.2d 348, 351 (1982). Nevertheless, conditions upon the suspension of execution or

---

[1] While several statutes expressly limit this authority, none are applicable to the instant case.

imposition of a sentence must be reasonable in relation to the nature of the offense, the background of the offender and the surrounding circumstances. *Loving v. Commonwealth*, 206 Va. 924, 930, 147 S.E.2d 78, 83 (1966), *rev'd on other grounds*, 388 U.S. 1 (1967); *Nuckoles*, 12 Va. App. at 1086, 407 S.E.2d at 356. Unreasonable "sentences . . . will . . . be vacated and set aside." *Loving*, 206 Va. at 931, 147 S.E.2d at 83.

We find nothing in this record to suggest that the restitution ordered by the trial court constituted an unreasonable condition to the suspended sentence and an abuse of discretion. The amount of restitution ordered is supported by the record, and defendant submitted no alternative plan, or related evidence, for the court's consideration. Under such circumstances, the restitution was an appropriate component in defendant's sentence.

Defendant further complains that the restitution was improperly ordered to someone "other than the victim" and imposed an unlawful and unconstitutional burden. These issues, however, were not argued before the trial court and will not be considered for the first time on appeal. Rule 5A:18; *Jacques v. Commonwealth*, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991). This procedural bar applies even to defendant's constitutional claims. *Cottrell v. Commonwealth*, 12 Va. App. 570, 574, 405 S.E.2d 438, 441 (1991).

While this Court will "notice . . . error[] for which [there has been] no timely objection . . . when necessary to [satisfy] the ends of justice," *Brown v. Commonwealth*, 8 Va. App. 126, 131, 380 S.E.2d 8, 10 (1989), the record must "affirmatively show[] that a miscarriage of justice has occurred, not . . . that a miscarriage *might* have occurred." *Mounce v. Commonwealth*, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987). Our review of the record discloses no miscarriage of justice in the instant cause. *See Jimenez v. Commonwealth*, 241 Va. 244, 249-50, 402 S.E.2d 678, 679-80 (1991).

Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*

Koontz, C.J., concurred.

Benton, J., concurring in the result.

Because I believe *Loving v. Commonwealth*, 206 Va. 924, 930, 147 S.E.2d 78, 83 (1966), *rev'd on other grounds*, 388 U.S. 1 (1967), lacks any continuing validity, I concur only in the result affirming the judgment.