COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Senior Judges Clements, Haley and Petty

PAUL BRACY POWELL

MEMORANDUM OPINION*

v.     Record No. 0376-22-2                        PER CURIAM
                                                    NOVEMBER 22, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF GOOCHLAND COUNTY
Timothy K. Sanner, Judge

(Reed C. Amos; Amos & Amos, PLLC, on brief), for appellant.
Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Tanner M. Russo, Assistant
Attorney General, on brief), for appellee.


Under a plea agreement, Paul Bracy Powell pleaded guilty to two counts of grand larceny.

Powell's counsel filed a brief on his behalf accompanied by a motion for leave to withdraw in

accordance with *Anders v. California*, 386 U.S. 738, 744 (1967). A copy of that brief has been

furnished to Powell with sufficient time for him to raise any matter that he chooses. Powell filed a

supplemental, *pro se*, brief.

On appeal, Powell, through counsel, argues that the trial court erred in sentencing him

pursuant to the plea agreement and imposing $100,000 in restitution. Powell, *pro se*, appears to

argue that the trial court violated the plea agreement when it imposed the $100,000 in restitution and

that the Commonwealth inflicted fraud upon the trial court during his sentencing. After examining

the briefs and record in this case, the panel has determined that this appeal is wholly frivolous and

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). We affirm the judgment of the trial court.

BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (*en banc*) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (*en banc*) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

The plea agreement capped Powell's active incarceration at four years, made no mention of restitution, and was "the total agreement between the parties." Following a thorough plea colloquy, the trial court accepted the agreement.

The Commonwealth proffered that in early 2020 Robert and Linda Bloch decided to sell their home in Goochland with the help of real estate agent Amanda Hardesty. The Blochs bought a home in Aiken, South Carolina and resided there while Hardesty attempted to sell their Goochland home. To prepare the home for sale, Hardesty contracted Powell, with whom she was romantically involved. Emails and text messages between Powell and Hardesty illustrated that they utilized the Blochs' home as their private bed and breakfast and often left the home in disarray.

In the summer of 2020 Hardesty's relationship with Powell soured. On July 19, Hardesty went to the Blochs' residence to prepare for an open house. When she arrived, she noticed that some items were missing, and other items were misplaced within the home. The next day Hardesty reported the missing items to law enforcement and noted that the value of the missing property was

estimated at $256,000. Hardesty provided law enforcement the names Sharron Redford, Christian Redford, and Antwan James, also known as Smiley, as possible persons of interest.

The Blochs informed police officers that they were missing several paintings, a cherry red Gibson ES335 guitar, valued at $3,000, a homemade base, an autographed black Gibson Les Paul guitar, and a gun safe with a rifle and crossbow therein also valued at $3,000. The most significant piece of missing property was an oil painting valued at $180,000.

After Powell was developed as a suspect, he stated that he had taken the cherry red Gibson ES335 guitar. He claimed, however, that he did not intend to steal the guitar but that he liked it and wished to carry it around with him. When Powell was arrested the guitar had been in his hotel room, but the police did not confiscate it. The guitar has since disappeared.

The police also interviewed Christian Redford in connection to the thefts. He stated that he received a text message early one morning from Powell with the directive to come to the Bloch residence and pick him up. When Redford arrived, Powell, Antwan James, and an unidentified woman exited the house. Powell held a guitar in his hand and three or four paintings. Redford described the paintings as rough in texture and framed. James carried a bag containing unidentified objects. They placed the paintings, guitar, and bag in Redford's vehicle, and he drove Powell, James, and the woman to a hotel. [1]

Redford also stated that on a different date he and Powell drove Powell's truck to the Blochs' residence late one evening and took a gun safe from the shed. Powell and Redford then drove to Powell's father's house where Powell and Smiley unloaded the gun safe and attempted to gain access. Ultimately, they accessed a rifle and crossbow from the safe.

---

[1] Powell stated that the unidentified female was someone he met at the hotel, but that he did not know her name.

Sharron Redford stated that she had texted Marissa Doce about oil paintings that had appeared at Powell's home. In text messages to Sharron, Doce stated that she would ask Powell where he obtained the paintings. Moments later Doce stated via text message to Sharron that Powell affirmed "I stole them." Doce then sent Sharron a picture of one of the paintings. Sharron shared these text messages with law enforcement. The Blochs viewed the picture Doce sent Sharron and confirmed it was one of their missing paintings and that it was valued at $4,000.

Powell stipulated to the Commonwealth's evidence and added that his job was to clean, make repairs, and stage the home for sale. Consequently, Powell removed items from the home and brought in staging furniture. He asserted that Hardesty was the criminal mastermind and that he has been "caught with the bag." Nevertheless, utilizing the procedure approved in *North Carolina v. Alford*, 400 U.S. 25 (1970), he pleaded guilty to the two grand larceny charges.

At the sentencing hearing, the trial court opined that given the amount of property stolen "it probably would be difficult for complete restitution to be made, but it would strike the [c]ourt that something ought to be paid." The Commonwealth asserted that the stolen property was valued at $245,000 and that the insurance company had reimbursed the Blochs $40,000. The Commonwealth asked for $205,000 in restitution. When asked if the Commonwealth anticipated any other prosecutions, the Commonwealth noted that "there is one other codefendant. He has not been apprehended yet." The court stated that "in the event that person is successfully prosecuted and sentenced, we'll make the restitution joint and several with Mr. Powell."

Powell then entered text messages between himself and the Blochs into evidence. Powell argued that these texts could be categorized as friendly communication and illustrated the Blochs knew who he was despite their assertions they did not.

Before pronouncing its sentence, the trial court stated that Powell's role in the criminal enterprise was significant. The court noted that although the Blochs could likely bear the financial

burden more than the average person, "there's also some sentimental aspects of [the crime] too." The court recounted that a Les Paul guitar autographed by Les Paul was taken and that Les Paul would not sign another guitar because of his death. The court recognized that Powell likely would be unable to pay $205,000 in restitution, so limited the restitution obligation to $100,000. The court then sentenced Powell to ten years on each count of grand larceny and suspended eight years on each count for an active sentence of four years' incarceration. Powell appeals.

ANALYSIS

I. Powell's Arguments Through Counsel

Powell, through counsel, asserts that the trial court abused its discretion when it imposed restitution because the plea agreement did not contain a specific reference to or provision for restitution. Further, he asserts that the amount of restitution was not supported by a preponderance of the evidence.

When imposing a sentence, the court "has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Sauder v. Ferguson*, 289 Va. 449, 459 (2015) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

"A trial court has 'wide latitude' to make sentencing decisions such as the ordering of restitution, because '[t]he determination of sentencing lies within the sound discretion of the trial court.'" *Sigler v. Commonwealth*, 61 Va. App. 674, 678 (2013) (alteration in original) (first quoting *Deal v. Commonwealth*, 15 Va. App. 157, 160 (1992); and then quoting *Martin v. Commonwealth*, 274 Va. 733, 735 (2007)). Code § 19.2-303 provides that, "[a]fter conviction, . . . the court may . . . suspend the sentence in whole or part and in addition may place the

defendant on probation under such conditions as the court shall determine." When the Commonwealth seeks restitution, it must prove "the 'damages' or loss incurred by an aggrieved party as a result of the offense" by "a preponderance of the evidence." *McCullough v. Commonwealth*, 38 Va. App. 811, 816 (2002); *Bazemore v. Commonwealth*, 25 Va. App. 466, 468-69 (1997).

Here, the plea agreement did not address whether Powell would be required to pay restitution. The plea agreement only capped Powell's active incarceration at four years. The trial court has wide latitude in fashioning a sentence including whether to impose restitution.

The trial court considered all the circumstances relevant to restitution and found that the loss to the Blochs caused by Powell's offenses, less the insurance reimbursement, was $205,000. This finding is supported by a preponderance of evidence. The Commonwealth proffered, and Powell stipulated, that while the Blochs were in South Carolina, Powell and Hardesty used the Bloch residence as a party home. Over the course of several months Powell, without permission, permanently deprived the Blochs of several paintings, at least two guitars, and a gun safe containing a rifle and crossbow. One of the paintings was valued at $180,000. Another painting was valued at $4,000. The cherry red guitar was valued at $3,000. The gun safe and the contents therein were valued at $3,000.

At the sentencing hearing, the Commonwealth stated that the total value of the stolen property was $245,000 and the insurance company had paid the Blochs $40,000. Consequently, the Commonwealth requested $205,000 in restitution. The trial court opined that Powell was unlikely to repay that total and imposed restitution in the amount of $100,000. This restitution amount is reasonable given that Powell stole $245,000 worth of property.

Furthermore, the trial court was required to impose at least partial restitution because it suspended part of Powell's sentence for a property crime. Powell was sentenced to ten years,

with eight years suspended on each of his two grand larceny convictions. Code § 19.2-305.1 states:

> Notwithstanding any other provision of law, no person convicted of a crime in violation of any provision in Title 18.2, which resulted in property damage or loss, shall be placed on probation or have his sentence suspended *unless such person shall make at least partial restitution* for such property damage or loss.

(Emphasis added). Therefore, the trial court was required by statute to impose at least partial restitution given its suspension of Powell's sentence. Thus, we find that the trial court did not abuse its discretion when it imposed $100,000 in restitution.

## II. Powell's *Pro Se* Arguments

### A. *Sentencing*

Powell, *pro se*, appears to argue that the trial court violated the plea agreement when it imposed restitution and sentenced him to four years' active incarceration. Powell further contends that the copy of the two-page written plea agreement in his possession is not the agreement that he signed, which he contends was four pages in length and had different "verb[i]age" and "numbers."

### 1. Violating Plea Agreement

As articulated *supra*, the plea agreement did not contemplate restitution. Given the trial court's wide latitude under Code § 19.2-305.1, the trial court did not abuse its discretion when it imposed restitution. Further, the record does not support Powell's contention that he signed a different plea agreement. The record shows that Powell signed the two-page plea agreement as well as a four-page questionnaire concerning his guilty pleas.

### 2. Four Years' Active Incarceration

To the extent that Powell argues that the trial court abused its discretion when it sentenced him to four years' active incarceration, we find that argument is without merit.

- 7 -

"[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du*, 292 Va. at 564 (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565).

It was within the trial court's purview to weigh Powell's mitigating evidence. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.*

Here, the stipulated facts established that over the course of several months, Powell, who was a handy man for the Blochs' realtor, raided the Blochs' home of many valuable items. He took several paintings, at least two guitars, and a gun safe with a rifle and crossbow therein. The plea agreement contemplated that the maximum period of incarceration to be imposed would be four years. In sentencing Powell to ten years, with eight years suspended on each of his grand larceny convictions, the trial court remained within the range of reasonableness afforded to it at sentencing. We will not disturb the trial court's decision on appeal.

### B. *Fraud on the Court*

Lastly, Powell, *pro se*, appears to argue that the Commonwealth committed fraud on the trial court when it proffered that an autographed black Les Paul guitar had been stolen and when it proffered that there was "one other codefendant" that "ha[d] not been apprehended yet." He stresses that no charging documents mentioned an autographed Les Paul guitar and that the first

- 8 -

mention of such a guitar occurred at sentencing, and he further asserts that he has proof that the autographed Les Paul guitar is in the victims' possession. He observes that when explaining its restitution order, the trial court only mentioned the autographed Les Paul guitar and no other property.

He also contends that no charging documents had been issued at the time of the prosecutor's statements at sentencing and that the Commonwealth intentionally misled the court into thinking restitution would be joint and severable. The Commonwealth, he argues, falsely stated that it had moved to *nolle prosequi* another co-defendant's charge when, in fact, that co-defendant had "confessed to the crimes." He asserts joint and severable restitution should have been imposed with that co-defendant.

"The law does not presume fraud; to the contrary, the presumption is always in favor of innocent conduct." *Ein v. Commonwealth*, 246 Va. 396, 401 (1993); *see Jenkins v. Trice,* 152 Va. 411, 429-30 (1929). "Moreover, the burden is upon the party alleging fraud to prove it by clear and convincing evidence." *Ein*, 246 Va. at 401; *see Winn v. Aleda Constr. Co.,* 227 Va. 304, 308 (1984).

First, a separate warrant alleging that Powell stole the autographed Les Paul guitar was issued on the same day as the warrant alleging Powell stole the cherry red guitar. Further, Powell agreed with the Commonwealth's proffer that the autographed Les Paul guitar had been stolen. Lastly, Powell failed to prove, beyond a mere assertion, that the Commonwealth misrepresented to the trial court that the black autographed Les Paul guitar was stolen. Because Powell failed to carry his burden, we hold that the Commonwealth did not perpetrate fraud on the trial court.

At the sentencing hearing, the trial court inquired and was made aware that other individuals may be charged in connection to the larcenies. As of the date of Powell's sentencing,

however, none of his alleged accomplices had been charged. The trial court determined that it would leave open the possibility of joint and severable liability with any accomplice who was formally charged and convicted in connection to these crimes. In ordering restitution, however, the trial court was aware, contrary to Powell's assertion, that Powell alone would be obligated to pay the full restitution amount. Additionally, Powell offers no proof that the Commonwealth's statements regarding possible co-defendants were false. We find that the Commonwealth did not perpetrate fraud on the trial court.

Finally, we consider Powell's observation that the trial court only referred to the black autographed Les Paul guitar when fashioning restitution. Although Powell is correct in his observation, it is clear in context of the trial court's ruling that the court was balancing the actual monetary value of all the items taken, the sentimental value of those items as well as Powell's ability to repay the Blochs. The autographed Les Paul guitar was an example of the sentimental value lost to the Blochs which could not be accurately calculated nor replaced given Les Paul's death. The trial court opined that Powell would be unlikely to pay $205,000 in restitution and that he, in fact, would be unlikely to pay even the $100,000 in restitution. Nevertheless, the trial court properly imposed the $100,000 restitution obligation upon Powell. As articulated above, we find the trial court did not abuse its discretion when imposing this amount of restitution.

CONCLUSION

Accordingly, we affirm the trial court's judgment and grant the motion for leave to withdraw. *See Anders*, 386 U.S. at 744. This Court's records shall reflect that Paul Bracy Powell is now proceeding without the assistance of counsel in this matter and is representing himself on any further proceedings or appeal.

*Affirmed.*