COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Ortiz and Lorish
Argued at Norfolk, Virginia

LADERRIAN DEVONNAE COPELAND

v.      Record No. 0085-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE CLIFFORD L. ATHEY, JR.
DECEMBER 29, 2022

UNPUBLISHED

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
W. Richard Savage, III, Judge

Sean Harris, Assistant Public Defender (Brittany Barnes, Assistant
Public Defender, on brief), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

Laderrian Devonnae Copeland ("Copeland") was convicted of embezzlement, pursuant to a

written plea agreement, in the Circuit Court of the City of Suffolk ("trial court") and sentenced to

five years' imprisonment with four years and eleven months suspended. The trial court also ordered

Copeland to pay $27,458.56 in restitution to Kroger grocery store ("Kroger"). Copeland contends

that the trial court abused its discretion when determining the amount of restitution. We disagree

and affirm the trial court's decision.

I. BACKGROUND

In support of Copeland's guilty plea, the Commonwealth proffered that from January 1 to

March 16, 2021, Copeland worked as a cashier at a Kroger located in the City of Suffolk. Some of

the embezzlements were recorded on store surveillance cameras, but numerous "other dates" where

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

unrecorded losses totaling $27,458.56 also allegedly occurred were attributable to cash registers Copeland was operating during her employment.

Moreover, during an interview with a loss prevention officer employed by Kroger, Copeland admitted that "she had been taking cash from the drawer" to use for "a down payment on a car" and "to get her nails done." Copeland eventually admitted to the officer that she took money "every shift" and it was often "well over $1,000." Copeland also admitted that she had taken over $1,000 on her "last shift" and that the $27,458.56 restitution claim was "[p]robably" a "reasonable figure for the total she ha[d] taken." However, when later questioned by law enforcement, Copeland "refused to acknowledge a specific total amount."

At trial, pursuant to a written plea agreement, Copeland pled guilty to a single embezzlement charge covering the entire duration of her employment. In exchange, the trial court agreed to dismiss without prejudice four additional embezzlement charges. The plea agreement also gave the trial court discretion to determine Copeland's sentence and the amount of restitution. The plea agreement also permitted the Commonwealth to present evidence and argument during the sentencing hearing with respect to the "nature" and total "number" of embezzlements Copeland committed during her employment. Following acceptance of the plea agreement, the trial court convicted Copeland of the single count of embezzlement and scheduled a sentencing hearing.

At the sentencing hearing, Kroger's senior asset protection specialist, Tarah Brooks ("Brooks"), testified that she began investigating Copeland after "cash shortages" were attributed to her cash registers. During surveillance of Copeland captured on video between January and March 2021, Brooks observed Copeland regularly open her cash register drawer between customers, remove cash from the "large" denomination section, and pocket it. Brooks explained to the trial court that when a cashier at Kroger operates a register, he or she must enter a password that "links their operator number to any transactions while they're on the register." Brooks testified that

- 2 -

multiple cashiers might use a single register on a given day, but not at the same time. Brooks' investigation revealed no "other employees" who were "creating problems with cash management."

Brooks further testified as to the dates and amounts embezzled as previously proffered by the Commonwealth during the entry of the guilty plea which reflected that Copeland's register was also "short" $492.08 on February 17, 2021, $658.63 on February 21, 2021[1], $970.21 on February 26, 2021, and $699 on March 5, 2021. Finally, Brooks testified that the video showed Copeland taking large bills, not small bills or coins, and that some of the "uneven amounts" could be caused by "unsuspicious shortages" or "overages."

At the conclusion of the sentencing hearing, the Commonwealth requested that the trial court impose thirty days' incarceration and payment of "the full restitution of $27,458.56." Copeland argued that the guidelines recommended probation, and to her credit, she had been honest and forthcoming when confronted by the detectives and Brooks. Copeland also argued that $27,458.56 in restitution was too "high" and it would not be "fair to hold her accountable for th[e] entire amount of shortages." Accordingly, she requested that restitution be limited to $7,471.75, which represented the sum of the shortages on the days when surveillance footage recorded her removing money from her cash register. The trial court sentenced Copeland to five years' incarceration with four years and eleven months suspended and further found that the Commonwealth had proved "not just by a preponderance of the evidence but beyond a reasonable doubt that [she] took $27,458.56" before ordering Copeland "to pay that back as restitution." Copeland noted this appeal.

---

[1] Brooks testified that there were two shortages attributed to Copeland on February 21, 2021; one of the shortages was recorded by surveillance video and included in the Commonwealth's proffer during the plea hearing.

## II. ANALYSIS

### A. Standard of Review

"We review a trial court's restitution determination for abuse of discretion." *Slusser v. Commonwealth*, 74 Va. App. 761, 774 (2022) (citing *Fleisher v. Commonwealth*, 69 Va. App. 685, 689 (2019)). On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 323-24 (2018)).

### B. The trial court did not abuse its discretion in sentencing Copeland to pay restitution in the amount of $27,458.56 because a preponderance of the evidence supported this finding.

Copeland argues that the trial court abused its discretion in determining her restitution amount because $27,458.56 exceeds the scope of damage "directly caused" by her offense. *See Fleisher*, 69 Va. App at 690 ("Costs that result only indirectly from the offense, that are a step removed from the defendant's conduct, are too remote and are inappropriate for a restitution payment." (quoting *Howell v. Commonwealth*, 274 Va. 737, 741 (2007))). Copeland asserts that the trial court failed to give significant weight to Brooks' testimony that multiple cashiers could work at a register each day and that the shortages on Copeland's register could have included amounts caused by "unsuspicious" business-related reasons. Copeland also contends that the court disregarded "the limited surveillance footage," which depicted her taking only "larger bills." Finally, Copeland argues that the trial court gave "too much weight" to Brooks' "bare testimony that $27,458.56 was all linked to [her] offense," especially considering that the surveillance video only linked her to $7,886.16 of the shortages.

- 4 -

A trial court has discretion in ordering restitution. *See Slusser*, 74 Va. App. at 770 ("Code § 19.2-303 provides that, '[a]fter conviction, . . . the court may . . . suspend the sentence in whole or in part and in addition may place the defendant on probation under such conditions as the court shall determine.' Such conditions often include restitution."). In seeking restitution, the Commonwealth is charged with proving damages by a preponderance of the evidence. *Id.* (quoting *McCullough v. Commonwealth*, 38 Va. App. 811, 816 (2002)). Additionally, "restitution is proper only when a victim's financial loss is actually 'caused by the offense'—not when the financial loss is only 'related to' the offense." *Shelton v. Commonwealth*, 66 Va. App. 1, 7 (2016) (quoting *Howell*, 274 Va. at 741).

Here, the trial court did not abuse its discretion by determining that Copeland owed $27,458.56 in restitution to Kroger. Brooks, the senior asset protection specialist, testified that this amount was the loss associated with Copeland's registers during her employment at Kroger. In addition, Copeland admitted that she took money from her registers every shift, often over $1,000 at a time. She also admitted that $27,000 was "probably" a good estimate of how much she took over the course of the two and a half months she was employed by Kroger. *See Prince v. Commonwealth*, 228 Va. 610, 613 (1985) ("An admission deliberately made, precisely identified and clearly proved affords evidence of a most satisfactory nature and may furnish the strongest and most convincing evidence of truth." (quoting *Tyree v. Lariew*, 208 Va. 382, 385 (1967))).

Moreover, surveillance footage confirmed that during eight separate shifts, Copeland embezzled at least $7,886.16, and Brooks testified that no "other employees" were "creating problems with cash management." Brooks' testimony about the likelihood of the registers reporting an "unsuspicious" overage or shortage after a shift also explains the uneven amount of the total restitution. *See Deal v. Commonwealth*, 15 Va. App. 157, 161 (1992) (affirming that a calculation of $43,215.21 of "total losses" based on "recurring deficiencies in daily ledger entries" was a

reasonable restitution amount when "*little* or no shortages occurred" when the defendant was not working (emphasis added)). Copeland's reliance on *Fleisher* is misguided. In *Fleischer*, this Court found that ordering restitution for the cost of replacing lost car keys, changing the locks, and reprogramming the car's computer was "not too remote or attenuated from the crime to establish an abuse of discretion." *Fleisher*, 69 Va. App. at 690-91 (finding that it is not outside a court's discretion to impose restitution costs for "losses directly caused by appellant's criminal offense" and that go no further than "making the victim whole"). The trial court's restitution award for the suspicious shortages associated with Copeland's register is no less remote or attenuated than the costs affirmed in *Fleisher*.

Since only a preponderance of the evidence is necessary in this case to support the trial court's restitution award, Brooks' testimony concerning Kroger's automated process for identifying the amount of shortages, the surveillance videos, and Copeland's previous admission to Brooks that the total amount she was accused of embezzling was "probably right" meets the preponderance of evidence standard, and therefore the trial court did not abuse its discretion in awarding restitution in the amount of $27,458.56.

## III. CONCLUSION

For the foregoing reasons, the trial court's award of restitution is affirmed.

*Affirmed.*