405 S.E.2d 438 (1991)
Christopher Earl COTTRELL
v.
COMMONWEALTH of Virginia.
Record No. 1087-89-2.
Court of Appeals of Virginia.
June 4, 1991.
*439 Russell C. Williams, Asst. Public Defender, for appellant.
H. Elizabeth Shaffer, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., on brief), for appellee.
Before BARROW, COLE and COLEMAN, JJ.
COLE,[*] Judge.
On October 20, 1988, the appellant, Christopher Earl Cottrell, entered into a plea agreement with the Commonwealth whereby he agreed to plead guilty to burglary. In exchange for this plea, the Commonwealth agreed to recommend five years in the penitentiary, suspended on the conditions that he: (1) serve nine months in jail; (2) testify truthfully against a co-defendant, Russell Allen Walls, when he is prosecuted for this offense; (3) be on supervised probation for ten years upon his release from jail; (4) pay restitution; and (5) keep the peace and be of good behavior. The court accepted the plea agreement and sentenced the defendant accordingly.
Based upon a representation of the Commonwealth's attorney that "the defendant has violated the terms of the suspended sentence by failing and refusing to testify truthfully in the case of his co-defendant, Alvin [sic] Walls," a show cause order was issued requiring Cottrell to appear on July 11, 1989, "to show cause why the suspended sentence previously given should not be revoked."
A revocation hearing on the show cause order was held on July 11, 1989. Detective Palmer testified for the Commonwealth that he interviewed Cottrell concerning the burglary charge. Cottrell admitted the break-in and implicated Russell Allen Walls. He told Palmer that Walls went inside the residence with him and took a guitar and a keyboard. Based upon this information, Walls was indicted for burglary. Palmer further testified that he interviewed Cottrell on the morning of Walls' preliminary hearing. According to Palmer, Cottrell told him that he and Walls were walking down the street together when he, Cottrell, saw the house and decided to break into it. He said Walls knew nothing of his plans prior to the break-in. Cottrell told Palmer that he broke into the home by himself, and that Walls remained outside. By the time Cottrell left the home with the stolen goods, Walls had left. Cottrell told Palmer "that is all I have got to say and I am telling you the truth." Cottrell further said that he would so testify if called as a witness. Based on this change in Cottrell's version of the crime, Cottrell was not called as a witness, and the charges against Walls were dropped because the Commonwealth's entire case depended upon Cottrell's testimony.
Cottrell testified in his own behalf at the revocation hearing. He contended that he had given Palmer the same statement on both occasions. According to his testimony, he told Palmer that he and Walls had left the park and were walking down the street. Cottrell saw a light on in a house and told Walls that he "was going to check things out." He saw guitars, an organ, and other things laying around and told Walls to "watch out." Walls said, "All right." Cottrell said he stole the merchandise and Walls did not enter the house. He further testified: "Allen [Walls] was just looking out for me. He was there. He got, you know, after we did the B and E we sold the stuff, but what we didn't sell, we threw it away. You know, we split the money."
At the conclusion of the revocation hearing, the trial court revoked the suspended five year sentence imposed upon Cottrell for burglary. On appeal, Cottrell raises three questions: (1) whether a trial court's finding that a person had testified untruthfully is supported by any evidence where the record shows that the individual never testified at all; (2) whether the Commonwealth must observe its obligations under *440 plea agreements it makes; and (3) whether the trial court revoked a suspended sentence for failure to "cooperate" or for some other reason neither stated in the plea agreement nor made known to the defendant prior to his revocation hearing and, if so, whether such revocation was arbitrary and capricious, constitutionally impermissible, or both. We affirm the decision of the trial court.
At the outset, Cottrell contends that he was brought into court for one purpose only: to show cause why his suspended sentence should not be revoked because he had violated his agreement to testify truthfully. We disagree with this position. The show cause order stated that the Commonwealth's attorney represented to the court that Cottrell had violated the terms of the suspended sentence by failing and refusing to testify truthfully in the case of his co-defendant. However, the order itself contained no such restriction upon the court and ordered Cottrell to appear and show cause why the suspended sentence previously given should not be revoked. We hold that the trial court was not restricted to the Commonwealth's representation. If Cottrell desired to limit the Commonwealth, he should have requested the court to require a filing of a bill of particulars.
Cottrell maintains that since he was not called upon to testify against Walls, the court could not find that he had violated the condition to testify truthfully. He also contends that the Commonwealth may not repudiate its plea agreement because it is disappointed in the result it achieves and he asserts that the revocation of his suspension constituted a breach of the plea agreement. We disagree. Under the plea agreement, the Commonwealth was required to recommend to the court that Cottrell be sentenced to five years and that the prison term be suspended on condition that Cottrell serve nine months in jail. The Commonwealth performed its part of the bargain. The trial court accepted the Commonwealth's recommendation and imposed sentence accordingly.
At the suspension hearing, the trial court had before it a distinct conflict in the evidence. It had to decide whether to believe Detective Palmer when he testified that Cottrell implicated Walls in the breaking and entering in his first interview or whether to believe Walls when he testified that he did not do so. It is clear from the court's decision that it necessarily accepted the testimony of the police officer and resolved the conflict by finding that Cottrell did implicate Walls in the first account.
"In determining whether the evidence warrants the revocation of a suspension of sentence, the credibility of the witnesses and the evaluation and weight of their testimony, are for the court." Slayton v. Commonwealth, 185 Va. 357, 366-67, 38 S.E.2d 479, 484 (1946). Where the record does not show upon what ground the judge revoked the suspension of sentence, the presumption is that it was upon a valid finding that the defendant had in some manner violated the condition of the suspension. Id. at 369, 38 S.E.2d at 485. However, the trial judge commented that based upon the circumstances of this case, he had to believe Palmer.
From this point on, it is inconsequential whether Walls' first statement to Palmer was true or false and whether Cottrell would have been committing perjury had he implicated Walls. If his testimony implicating Walls would have been untruthful, he obtained his suspended sentence in the first instance by perpetrating a fraud upon the court, a finding which would have justified revocation of the suspension.
If Cottrell's first account was truthful, and he refused to testify in accordance with his agreement, he violated the terms of his plea agreement and suspension. Cottrell either violated the terms of the agreement or the suspension was obtained by fraudulent representation. The Commonwealth did not have to call Cottrell as a witness and have him testify when he had expressed an intent to testify adverse to the statement made to Palmer in the first interview. The Commonwealth is not required to put its case against Walls in jeopardy by calling Cottrell to testify as a witness. At some future date, the Commonwealth may discover other evidence to *441 convict Walls or Cottrell himself may decide to honor his agreement and implicate Walls.
Deceit, untruthfulness and deception at the time of the sentencing are always grounds for revoking a suspended sentence. State v. Lintz, 162 Mont. 102, 106, 509 P.2d 13, 15 (1973). There is "significant authority for the proposition that a trial court has the discretion to revoke probation if information is discovered which, had it been known at the time of sentencing, would have led the trial court to deny probation." State v. Darrin, 325 N.W.2d 110, 113 (Iowa 1982); see also Annotation: Revocation of Probation Based on Defendant's Misrepresentation or Concealment of Information From Trial Court, 36 A.L.R.4th 1175 (1985).
Lastly, the defendant contends that if the revocation of the suspended sentence was based upon any other condition of the plea agreement than his agreement to testify truthfully, the revocation was arbitrary and capricious, and constitutionally impermissible. We refuse to address the constitutional question because the defendant did not raise it in the trial court. Rule 5A:18.
For the reasons stated, we affirm the decision of the trial court.
Affirmed.
BARROW, Judge, dissenting.
I dissent because, in my opinion, (1) since the defendant was not called to testify at the accomplice's preliminary hearing, the Commonwealth failed to prove that he refused to testify truthfully; and (2) since the show cause order sought to have the defendant's sentence revoked only because he failed to testify truthfully, the trial court could not revoke his sentence for other reasons.
NOTES
[*] Judge Cole participated in the hearing and decision of this case prior to the effective date of his retirement on April 30, 1991 and thereafter by designation pursuant to Code § 17-116.01.