COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Willis and Annunziata
Argued at Chesapeake, Virginia


PHILLIP ASHBY MITCHELL

                                    MEMORANDUM OPINION* BY
v.    Record No. 2313-98-1      CHIEF JUDGE JOHANNA L. FITZPATRICK
                                        NOVEMBER 16, 1999
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                      Randolph T. West, Judge

            Jeffrey C. Rountree for appellant.

            Linwood T. Wells, Jr., Assistant Attorney
            General (Mark L. Earley, Attorney General, on
            brief), for appellee.


     Phillip Ashby Mitchell (appellant) was convicted on

March 13, 1998, of two counts of embezzlement and one count of

grand larceny by false pretenses.  The trial court sentenced

appellant to three ten-year terms and suspended all of the time

imposed. At a subsequent revocation hearing, the trial court

revoked all of the suspended sentences but suspended nine years

of the ten years previously imposed on each count.  On appeal,

appellant argues the trial court abused its discretion in

revoking part of his suspended sentences.  Finding no error, we

affirm.

---

        * Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, the prevailing party below, granting to it all reasonable inferences fairly deducible therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).  So viewed, the evidence established that on March 13, 1998, appellant pled guilty to two counts of embezzlement and one count of grand larceny by false pretenses.  On each count, the trial court sentenced appellant to ten years imprisonment, all of which was suspended.  In addition to imposing one year of supervised probation, the trial court ordered appellant to make restitution in the amount of $5,000 to Charles and Kathleen Johnson, $6,000 to Michael and Lori Stephenson, and $10,495 to James B. Majka.  Restitution was to be made by May 18, 1998.

On May 20, 1998, the Commonwealth filed a motion to revoke appellant's suspended sentences because he had failed to make restitution as required.  Additionally, Douglas Weeks (Weeks), appellant's probation officer, filed a Major Violation Report, noting that appellant failed to obey the laws of the Commonwealth by unlawfully displaying vehicles for sale without a license.  The report also charged that appellant "continued to commit Fraud" in that he has "sold vehicles and has failed to pay the owner's (sic) as stated in the contract."

At appellant's May 26, 1998 revocation hearing, appellant stipulated to the violations alleged in the probation officer's report. Appellant's counsel gave the court restitution checks for each of the victims in accordance with the court's prior sentencing order. Additionally, appellant indicated that, upon his release from jail, he had arranged to begin a job as a salesman for a local radio station.

Although appellant stipulated to the violations alleged by his probation officer, and the trial court could have revoked appellant's suspended sentence at that time, the trial court gave appellant another opportunity to pay off his outstanding debts to parties that were not the subject of the instant offenses. The revocation hearing was continued to July 7, 1998, thus allowing appellant additional time to provide the court with "a breakdown of everything that he agrees to that he has defrauded people out of and what he intends to do about it, on what schedule, etc." (i.e., to show that he was of "good behavior").

On July 7, 1998, appellant presented the trial court a list of outstanding debts owed to different victims. At that hearing, the trial court learned that appellant never began the job at the radio station and that he was now employed by Terminix. Since the new position involved appellant going to the homes of potential customers and recommending that certain work be completed, the trial court was concerned that appellant

might attempt to defraud customers to increase his commissions. Accordingly, the trial court required appellant to return on September 9, 1998 with a different job. Appellant was also ordered to provide proof that substantial payment had been made on his outstanding debts.

On September 9, 1998, appellant reported that he had gotten a new job at Haynes Furniture. When asked whether he had made any restitution payments to Sharon Richardson (Richardson) and Marvin Whitmore (Whitmore), appellant presented the trial court with copies of two cashier's check stubs as proof that payment had been made to these parties. However, the stubs also indicated that the checks were made out to "Mitchell Auto Sales," appellant's business. Unclear as to whether appellant actually paid the victims, the trial court stated, "I am tired of playing with this. I have bent over backwards and I'm not getting the results that I want. Every time it's something different. Who did this money go to?" Appellant unequivocally stated that both Richardson and Whitmore received the checks.

The court again continued the hearing to the next day to verify whether the victims had been paid. At that hearing, Ms. Richardson testified that she received no monies or check from appellant. Appellant's probation officer, Mr. Weeks, confirmed with the First Advantage Federal Credit Union that the two cashier's checks, payable to "Mitchell Auto Sales or Sharon Richardson" and "Mitchell Auto Sales or Marvin Whitmore," were

- 4 -

cashed and deposited into appellant's business bank account. The Commonwealth also introduced into evidence two handwritten notes, in which appellant pleaded with the victims to "work with [him]" regarding the restitution payments.[1]

Appellant then testified, stating that he was sorry for what he had done. He stated that he used the cashier's checks to keep his house out of foreclosure, and appellant admitted that he did not pay the victims, despite his prior testimony that he had paid them. Appellant testified as follows:

> Q. You were supposed to be in here
> yesterday to give proof of payment of
> restitution to Ms. Richardson and Mr.
> Whitemore, correct?
>
> A. Yes, sir.

---

[1] The letter to Ms. Richardson, which was delivered to her residence by appellant on September 8, 1998, stated the following:

> I am doing everything with in (sic) my power
> to get a loan so that I can pay your money.
> This was supposed to have been mail[ed] one
> day last week but I understand that it
> wasn't until [S]unday. I am trying three
> [d]ifferent [p]laces to borrow money. I
> really want to pay you. I am trying hard to
> get your money. Mr. Weeks will probably be
> calling you to see if you received this.
> Please work with me. Thank you.

The letter to Mr. Whitmore made a similar plea, stating the following:

> You will be receiving this [check] just as
> soon as we get your last name spell (sic)
> right. I have a [p]robation officer that
> will be calling you by the name of Mr.
> Weeks. He will be asking you if you
> received this [check] yet. I wish you
> wouldn't have to talk to him. . . . He is
> trying to put me in jail.

Q.   And as part of that proof, you gave the
Judge those check stubs?

     *     *     *     *     *     *     *

A.   From what I understood, cashier's, yes.

Q.   But the money didn't go to Ms.
Richardson or Mr. Whitmore?

A.   That's why I went out there yesterday.
I was going to have proof this morning.

Q.   That money did not go to them?

A.   No, sir.

Q.   You were lying to the Court?

A.   Sir, I was going to try to straighten it
out yesterday.

Q.   You were lying to the Court?

A.   Not my intention, sir.

Ms. Richardson was called again to the stand to confirm that

appellant had not paid her any money.

     At the conclusion of the evidence, the trial court revoked

appellant's suspended sentences.  The trial judge stated:

        Mr. Mitchell, this court, the
     Commonwealth and everyone else has bent over
     backwards trying to get this matter
     straightened out so that you could stay out
     of jail. . . .  As I pointed out a moment
     ago, from the day this Court found you
     guilty of [the charges], I set the case down
     for sentencing, you walked out of this court
     and perpetrated the same identical offense,
     knowing that you were coming back before
     this Court for sentencing. . . .  You have
     done nothing but lie to this Court day in
     and day out, every time you have been in
     here, and I don't even think the truth is
     within you. . . .

> There's nothing this Court can do for you and I think it's time you started paying society.
>
> I'm granting the motion to revoke on all three indictments. . . .

Although the trial court revoked the suspended sentences of ten years on all three counts, the court re-suspended nine years on each count for a period of ten years and imposed two years of supervised probation or "until all debts and court costs have been repaid, whichever is later."

## II.

Pursuant to its authority under Code § 19.2-306, "[t]he court may, for <u>any cause deemed by it sufficient</u> within the probation period, . . . revoke the suspension of sentence." Code § 19.2-306 (emphasis added). "A revocation . . . must be based on reasonable cause but a court has broad discretion in making such a determination." <u>Resio v. Commonwealth</u>, 29 Va. App. 616, 621, 513 S.E.2d 892, 895 (1999) (quoting <u>Patterson v. Commonwealth</u>, 12 Va. App. 1046, 1048, 407 S.E.2d 43, 44 (1991)). "To put the matter another way, the sufficiency of the evidence to sustain . . . revocation is a matter within the sound discretion of the trial court, . . . reversible only upon a clear showing of an abuse of such discretion." <u>Id.</u> (quoting <u>Slayton v. Commonwealth</u>, 185 Va. 357, 367, 38 S.E.2d 479, 484 (1946)); <u>see also Holden v. Commonwealth</u>, 27 Va. App. 38, 41, 497 S.E.2d 492, 493 (1998).

The evidence clearly established that appellant violated the conditions of his probation.  Appellant (1) failed to make timely restitution payments to the three victims defrauded in the underlying convictions; (2) continued to fraudulently obtain money from other individuals, thus violating a condition of his suspended sentences that he obey the laws of the Commonwealth; and (3) lied to the court.  See Cottrell v. Commonwealth, 12 Va. App. 570, 574, 405 S.E.2d 438, 441 (1991) ("Deceit, untruthfulness and deception . . . are always grounds for revoking a suspended sentence.").  Accordingly, we conclude that the trial court did not abuse its discretion in revoking appellant's suspended sentences.[2]  The judgment of the trial court is affirmed.

Affirmed.

---

[2] Appellant also argues that the trial court did not have the authority to order restitution in any cases not pending before the court and, therefore, the failure to pay Richardson or Whitmore was an improper factor to consider in revoking his suspended sentences.  However, appellant did not raise this issue before the trial court and his claim is barred on appeal.  See Rule 5A:18; Connelly v. Commonwealth, 14 Va. App. 888, 891, 420 S.E.2d 244, 246 (1992) ("A matter not in dispute before the trial court will not be considered for the first time on appeal."); Martin v. Commonwealth, 13 Va. App. 524, 530, 414 S.E.2d 401, 404 (1992) ("The primary function of Rule 5A:18 is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials.").