COURT OF APPEALS OF VIRGINIA


Present:  Senior Judges Hodges, Overton and
          Retired Judge Stephens*
Argued at Chesapeake, Virginia


LOIS EUNICE ROUNDTREE

                                    MEMORANDUM OPINION** BY
v.   Record No. 1686-99-1           JUDGE NELSON T. OVERTON
                                         JUNE 6, 2000
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                    A. Bonwill Shockley, Judge

          B. Thomas Reed for appellant.

          Eugene Murphy, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     On appeal from her convictions of robbery, in violation of

Code § 18.2-58; abduction, in violation of Code § 18.2-47; use

of a firearm in the commission of a felony, in violation of Code

§ 18.2-53.1; and carjacking, in violation of Code § 18.2-58.1,

Lois Eunice Roundtree contends that the trial court erred in

denying her motion to suppress statements made in violation of

her right to remain silent and her right to counsel.

---

     * Retired Judge J. Warren Stephens took part in the
consideration of this case by designation pursuant to Code
§ 17.1-400, recodifying Code § 17-116.01.

     ** Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

In reviewing the trial judge's denial of Roundtree's motion to suppress, "we view the evidence in the light most favorable to [the Commonwealth], the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence." Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). In our review, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). We consider de novo whether those facts implicate the Fourth Amendment and, if so, whether the officer unlawfully infringed upon an area protected by the Fourth Amendment. See id.

On the evening of January 2, 1999, Roundtree, Sean Thompson, and Floyd Walker drove to a Virginia Beach nightclub, where they spotted Chauncey Washington in the parking lot. They decided to rob him. Roundtree lured Washington out of his vehicle. Thompson, armed with a gun, and Walker then forced Washington back into the car, in which the three men drove to a bank ATM, followed by Roundtree.

Walker and Thompson then left with Washington and shot him. As Roundtree was leaving the bank, she was stopped for speeding. While stopped, a report describing Roundtree's car as involved in an abduction was issued. Police detectives found suspicious

-

sets of keys, blood splatters, gloves, and a .22 caliber round in the car, and took Roundtree to the station for questioning.

At the station, Roundtree was apprised of her Miranda rights. She repeatedly denied involvement in the crime, and almost two hours into the questioning, she asserted her right to remain silent, saying, "You read me my rights. You said I did not have to talk with you. I do not want to talk to you." The detective immediately left the room. For a time thereafter, the detective periodically entered the room to offer Roundtree a snack or beverage.

Three and a half hours after Roundtree asserted her right to remain silent, two police detectives entered the interrogation room and reminded Roundtree of her Miranda rights. She acknowledged her comprehension of those rights. The detectives said that they would like to resume talking to her, and she acquiesced, talking with the police for the next four hours.

Roundtree contends that the information communicated to the police in the second interview was obtained in direct violation of her constitutional right to remain silent.

"Miranda forbids continued interrogation of an individual in custody after [s]he has invoked [her] right to remain silent." Webber v. Commonwealth, 26 Va. App. 549, 557, 496 S.E.2d 83, 86 (1998) (citation omitted). Once such right is invoked, however, there is no "per se proscription of indefinite

-

duration upon any further questioning . . . ."  Weeks v.

Commonwealth, 248 Va. 460, 471, 450 S.E.2d 379, 386 (1994).

Courts must examine five factors to determine whether a

subsequent questioning was proper.  See Michigan v. Mosley, 423

U.S. 96, 104-06 (1975).

> Suggesting a case-by-case approach to
> determine that continued questioning was
> appropriate after an initial refusal to
> answer questions, the Mosley court mentioned
> five factors that related to the evidence in
> that case.  First, whether defendant "was
> carefully advised" before the initial
> interrogation "that he was under no
> obligation to answer any questions and could
> remain silent if he wished."  Second,
> whether there was an immediate cessation of
> the initial interrogation, and no attempt to
> persuade defendant to reconsider his
> position.  Third, whether the police resumed
> questioning "only after the passage of a
> significant period of time."  Fourth,
> whether Miranda warnings preceded the second
> questioning.  Fifth, whether the second
> interrogation was limited to a crime that
> had not been the subject of the earlier
> interrogation.

Weeks, 248 Va. at 471, 450 S.E.2d at 386 (citations omitted).

Detective Cox testified that he read Roundtree the Miranda

rights from a standard card.  She acknowledged that she

understood these rights, stated that she had received twelve

years of education, and denied any drug or alcohol use.  She

does not contend that she knowingly and voluntarily waived her

rights initially.  Two hours after questioning commenced,

Roundtree invoked her right to remain silent.  At that time,

detectives, clearly respecting that invocation, ceased

-

questioning and left the room, without attempting to persuade Roundtree to change her mind.  Several hours later, after returning to the room only to make sure Roundtree was comfortable, detectives resumed questioning.  At that time, the detectives reminded Roundtree of her Miranda rights, of which she acknowledged affirmatively her understanding.  Finally, police initially questioned Roundtree about her involvement in an abduction.  Details of the incident were sketchy, and only later did police find out about Washington's injuries.  "[T]he mere fact that the second interview involved some of the same subject matter discussed during the initial interview does not render the confession constitutionally invalid."  Id. at 471, 450 S.E.2d at 387.

When these factors are applied to the present case, no violation of Roundtree's constitutional rights occurred.  The record clearly supports the findings that Roundtree knew her rights and voluntarily waived them and that the police did not coerce Roundtree's cooperation, but rather fully respected her invocation of those rights.

As for Roundtree's contention that her statements were made in violation of her right to counsel, we find that Roundtree did not adequately preserve this issue for appeal.  "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ."  Rule 5A:18.  See

-

also <u>Jacques v. Commonwealth</u>, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991).  This rule extends to claimed errors that deny constitutional rights.  "We refuse to address the constitutional question because the defendant did not raise it in the trial court."  <u>Cottrell v. Commonwealth</u>, 12 Va. App. 570, 574, 405 S.E.2d 438, 441 (1991).

The judgment of the trial court is affirmed.

<u>Affirmed.</u>

-